WILLIAM CRUM, et al. v. THOMAS FILLERS et ux.

Eastern Section. January 9, 1926.

No petition for Certiorari was filed.

1. **Injunction.** Where an injunction has been dissolved it cannot be revived except by a new exercise of judicial power.

Where an injunction has been dissolved, it cannot be revived except by a new exercise of judicial power. The authority of the English courts to preserve the subject-matter of litigation pending the final determination of the controversy is said to be settled beyond controversy, and in this country the right to continue in force a preliminary injunction to maintain the status quo of the subject-matter pending the appeal, even though the right to a perpetual injunction is denied by the judgment, is recognized.

2. **Judgments.** Nunc pro tunc order takes effect as between the parties as of the date it should have been entered.

Except as to the rights of third parties, a judgment nunc pro tunc is retrospective and has the same force and effect, to all intents and purposes, as if it had been entered at the time when the judgment was originally rendered. It aids and cures proceedings which otherwise would be defective and irregular for want of a proper entry of judgment to sustain them. But the effects of such entry by relation will be confined to the rights and interests of the original parties, and it will not be allowed to prejudice the intervening rights of third parties without notice.

3. **Estoppel. Pleading.** Estoppel need not be specially pleaded where it appears in previous pleadings.

Where facts sufficient to constitute an estoppel appear in the previous pleading, the estoppel need not be specially pleaded, but may be taken advantage of by demurrer.

4. **Estoppel.** In Tennessee evidence showing an estoppel may be offered where the facts raising the estoppel are first pleaded in the answer.

Under systems of pleading which permit no replication the rules requiring estoppel to be pleaded in avoidance of defense has no application, and if plaintiff claims an estoppel against the defenses set up in the answer, he is entitled to give evidence concerning them without special pleading.

5. **Judgments.** A judgment is not void because the record is not signed by the judge.

The minutes of records of courts are generally required to be authenticated by the signature of the judge, but failure of the judge to sign the record as directed by statute does not make the judgment a nullity; it is at most irregular and erroneous, but not void.

6. **Easement.** Right to fence is not necessary to the enjoyment of right-of-way.

Where defendant had been granted an easement of right-of-way to a spring and in violation of an injunction had fenced the same, held that the enjoyment of the easement did not include the right to fence.

7. **Injunction. Evidence.** Evidence held to show defendant guilty of violation of an injunction.

In an action for contempt for the violation of an injunction where the defendant sought to avoid liability on the ground that the original decree had not been entered of record and the evidence showed that the decree had

been filed with the clerk and the decree had later been affirmed by the Supreme Court and a nunc pro tunc order had been made entering the decrees of record, held that defendant was guilty of violating the injunction even though he had acted before the decree was actually placed of record.

Appeal from Chancery Court, Greene County; Hon. Hal H. Haynes, Chancellor.

Affirmed.

Susong, Susong & Parvin, of Greeneville, for appellant.

Shoun, Swingle & Milligan and J. E. Biddle, of Greeneville, for appellee.

SNODGRASS, J.   This controversy is presented by a petition in the above-styled cause for an attachment of the said Thomas Fillers to answer for a contempt alleged to have been committed by him in violation of the injunction contained in the final decree pronounced in said cause enjoining him from in any way interfering with or obstructing ingress or egress to petitioner's spring.

It was denied that there had been any violation of the injunction; that any valid decree had ever been entered in the chancery court or in said cause; that the chancery court had any jurisdiction in the cause to entertain the petition, or that there had been any valid decree that the building or the fences complained of was in any sense a violation of the injunction.

The answer admitted that the above styled cause was lately pending in the chancery court, and that a decree of some character had been pronounced therein by the special Chancellor, but insisted that there was no decree entered in the cause.   It was admitted that the decree copied in the petition was one seemingly prepared by counsel in the case, and was in file, but denied that it had ever been entered, filed or OK'd by counsel, and the decree not having been entered it was denied that he was guilty of contempt in violating it.   The answer admitted that the case was appealed and affirmed, but it is insisted that no decree had been entered adjudicating the rights of the parties, and that he was not guilty of contempt even if the decree had been entered.   The answer admitted the building of the fences, but claimed the right to do so, and that it was not a contempt.

An attachment was issued and served upon the defendant, who gave bond.   During the progress of the case the decree hereinafter set out was entered nunc pro tunc.   The case was heard before the Chancellor at the September term, 1924, upon the record at large and the oral testimony introduced and heard in open court, including the certified copies of the decrees of the Court of Civil Appeals and the Supreme Court, when defendant Thomas L. Fillers was adjudged guilty of contempt in building and maintaining the

two fences on the side of the right-of-way over complainant's lands lying near the spring to which defendant was declared to have an easement of the right of use as determined and set out in the decree of the chancery court, which decree is affirmed by the Court of Civil Appeals, and affirmed and made final by the Supreme Court. The Chancellor held that the fences constituted an obstruction, was a violation of the decree of the old chancery case of William Crum, et ux. v. Thomas Fillers, et ux., as affirmed by the Court of Civil Appeals, and was made the final decree of the Supreme Court in said case, but from the fact that the said Fillers thought he had a right to build said fences from the advice of counsel, though unwarranted, the court assessed a fine of only one dollar against the defendant, and awarded only the nominal sum of $2.50 as damages against him, together with the costs.

A motion for a new trial was entered and overruled, an appeal was taken by defendant, bill of exceptions was filed, the appeal perfected, and defendant has assigned errors:

1. "The court erred in finding the defendant guilty of contempt in that he violated the decree rendered in the case of William Crum, et ux. v. Thos. L. Fillers, et al."

2. "The court erred in holding the defendant guilty of contempt, because there was no valid or binding decree of the special Chancellor delivered in said cause."

3. "The court erred in holding that the defendant by appealing from the alleged decree of the Special Chancellor in the original cause recognized the validity thereof, notwithstanding it had not been entered of record or approved by the Special Chancellor at the time the petition for contempt was filed, and thereby estopped himself to question said decree."

4. "The court erred in finding defendant guilty of contempt because he was without jurisdiction to entertain and pass upon the alleged charge, even had there been a valid decree on which to base such petition, after said original cause had been appealed to the higher court, which appeal vacated the alleged decree of Special Chancellor Bachman, and the cause was never thereafter remanded for further action of the court below."

These assignments will all be considered together.

The decree alleged to have been violated by the defendant is as follows:

"William Crum, et ux.,      )
          v.            )  Decree.
"Thos. L. Fillers, et ux.     )

"This cause was on this the 22nd day of March, 1920, heard before the Hon. E. K. Bachman, Chancellor, upon the bill, the answer of the defendants, the proof on file and the written agreement to use the original record from the county court of Greene county, of Jacob C. Myers, et al. v. Amy Myers, et al., and the argument of counsel and briefs submitted, from all of which the court finds and decrees as follows:

"First: That the true line between the lands of the complainant and the defendants, in dispute, around the bend of the creek, by the calls of the deed of John Winkle to R. C. Myers filed as Exhibit 'A' to the answer of the defendants, begins on the inside curve of the creek and runs with the edge of the water around the bend of said creek.

"Second: That the spring in question in this cause is on the opposite side of the creek from the lands of the defendant, and is not included in the calls of the deed of John Winkle to R. C. Myers, filed as exhibit to the answer of the defendants and that the legal title to said spring and the land on which it is situated is in complainants.

"Third: That said spring is not on the right of way for road, set up by the defendants in their answer, but lies between said road or right of way and the creek, and on the lands of complainants.

"Fourth: That defendants have failed to establish title to any of the lands lying on the opposite side of the creek from the line of said Winkle-Myers deed as hereinbefore found and adjudged and lying between the creek and said road or right of way, by use, enclosure, occupation or claim of adverse possession by themselves or through those whom they claim title, and the title to same and the possession and right to possession to same is in the complainants.

"Fifth: That defendants have by the use of water, for more than twenty years by themselves and through those under whom they claim, under a claim of right have acquired an easement in said spring for the use of water from same for domestic purposes, with a right of ingress and egress to and from same which easement is one running with defendants land.

"It is therefore ordered, adjudged and decreed by the court as follows:

"First: That the true line between the lands of complainants and defendants at the point in dispute in this cause runs on the inside curve of the creek and at the edge of the water around the bend of the creek.

"Second: That the spring in question is on the lands of complainant and that the legal title said spring and the land on which it is situated is in complainants.

"Third: That said spring is not on the right of way, or road set up by the defendants.

"Fourth: That the defendants have no title to any lands lying on the opposite side of said creek, from the point where the line between them and complainants is herein established, and that the title to all land lying between said right of way or road and the creek as shown by the plat made by C. E. Coile is in complainants.

"Fifth: That defendants have by user for more than twenty years next before the filing of the bill in this cause acquired an easement in said spring, a right of way to same, and the right to use water therefrom for domestic purposes only, which easement is one running with defendants land.

"Sixth: That subject to the rights of defendants in said spring as herein decreed, the defendants are enjoined from in any way hindering or in any way interfering with complainants or their tenants in the use of water from said spring, and from in any manner obstructing the entrance to same.

"And the complainants are in like manner enjoined and inhibited from in any manner interfering with defendants in the use of water therefrom for domestic purposes or in any obstructing the way to same.

"The costs of the cause will be paid, one-half by complainants and one-half by defendants and executions will issue accordingly."

"To the foregoing judgment and decree of the court defendants Thomas L. Fillers and wife, Maggie Fillers, reserve exceptions and pray to be allowed to preserve and rely on the same, and from the decree of the court adjudging and declaring that the line between the lands of complainants and defendants runs with the inside edge of the water around the bend of the creek at the point in controversy, and adjudging and declaring that defendants have not acquired title to and ownership of the land lying between the fence at the lower or inside edge of the right of way and the inside edge of the creek by enclosures maintained for more than twenty years under open, notorious, visible and adverse possession thereof against complainants and their predecessors in title, and by use and occupation thereof and adjudging and declaring that the spring in controversy is located on the lands of complainants and that they have legal title thereto, and adjudging and declaring that complainants are the legal owners of the land lying between the fence at the inside edge of the right of way and the bank of the creek and taxing defendants with one-half of the costs, defendants pray an appeal to the next term of the Court of Civil

Appeals sitting at Knoxville, Tennessee on the 1st Monday in May 1920, which appeal is by the court granted upon defendants filing with the clerk of this court proper appeal bond within thirty days.

"From the foregoing decree of the court finding and adjudging that the defendants have by use of water for more than twenty years by themselves and through those under whom they claim and under a claim of right acquired an easement in said spring for the use of water from the same for domestic purposes and the right of ingress and egress to and from the same and which easement is one running with defendants' land and from that part of said decree adjudging that they pay one-half the costs of the cause complainants except and pray to be allowed to rely on said exceptions and from said portions of said decree and findings of facts complainants pray an appeal to the next term of the Court of Civil Appeals sitting at Knoxville, Tennessee on the 1st Monday in May, 1920, which appeal is by the court granted upon complainants filing with the clerk of this court proper appeal bond within thirty days.

"The master will send up with the record the plat Exhibit 'A' to the deposition of J. C. Rowan and plat Exhibit 'A' to deposition of C. E. Coile.

"Thereupon court adjourned until November 17, 1922.

                    "Hal H. Haynes, Chancellor."

"Endorsement:

"No. 728.

"Wm. Crum et ux.

          v.

"Thos. L. Fillers et ux.

     "March 22, 1920.

          "Enter this decree.

               "E. K. Bachman, Special Chancellor."

This decree was pronounced in the cause of William Crum, et ux. v. Thomas L. Fillers, et ux., in the chancery court of Greene county, Tennessee, at the March Term, 1920, by Special Chancellor E. K. Bachman. It was prepared by the attorneys in the cause and placed in the file as embodying the decision and decree of the Chancellor, but by an oversight was not spread upon the minutes.

The original cause was appealed by the defendant Thomas L. Fillers to the Court of Civil Appeals, and the decree, as stated, while not formally entered upon the minutes in the court below, was copied by the Clerk and Master in the record, and the cause was heard and affirmed by the Court of Civil Appeals, setting out said decree, and then taken to the Supreme Court by certiorari, where the decree of the Court of Civil Appeals was affirmed.

Afterwards, on or about the 1st day of May, 1922, the defendant Thomas L. Fillers, in violation of the injunction, erected two fences directly across the path and way from the house of the complainant petitioner, where his son now resides, to the said spring mentioned in the decree. This was done to fence the right of way which the said defendant Fillers had across the lands of complainant petitioner, which right of way ran between said spring and the house aforesaid, as indicated on the plat set out as page 24 of the record and filed as Exhibit "A" to the deposition of William Crum.

As will be observed from said map and the decree, while the location of a right of way across the lands of complainant petitioner and running between the spring and the house aforesaid was generally referred to as belonging to defendant, it was not specifically described, and the spring was adjudged to be not on the right of way but on the lands of the complainant. However, it was adjudged that the defendant Fillers had acquired an easement in the spring and the right to the use of the water for domestic purposes, with the right of ingress and egress, but "that the true line between the lands of complainants and defendants at the point in dispute in this cause runs on the inside curve of the creek, and at the edge of the water around the bend of the creek."

"That the spring in question was on the land of complainant, and that the legal title to said spring and the land no which it is situated is in complainants."

"That said spring is not on the right of way or road set up by the defendants."

"That the defendants have no title to any lands lying on the opposite side of said creek from the point where the line between them and complainants is herein established, and that the title to all lying between said right of way or road and the creek, as shown by the plat made by C. E. Coile, is in complainants."

"That defendants have by user for more than twenty years next before the filing of the bill in this cause acquired an easement in the spring, and right of way to the same, and the right to use water therefrom for domestic purposes only, which easement is one running with the land.".

"That, subject to the right of defendants in said spring as herein decreed, the defendants are enjoined from in any way hindering or in any way interfering with complainants or their tenants in the use of water from said spring, and from in any manner obstructing the entrance to the same; and the complainants are in like manner enjoined and inhibited from in any way interfering with the defendants in the use of water therefrom for domestic purposes, or in any way obstructing the way to the same."

From this decree it appears that the defendants in the original cause appealed in the following words, which it is now insisted did not carry up that feature of the same effecting the injunction, to-wit:

"From the decree adjudging and declaring that the line between the lands of complainants and defendants runs with the inside edge of the water around the bend of the creek at the point in controversy, and adjudging and declaring that defendants have not acquired title to and ownership of the land lying between the fence at the lower or inside edge of the right of way and the inside edge of the creek by enclosures maintained for more than twenty years, under open, notorious, visible and adverse possession thereof, against complainants and their predecessors in title, and by use and occupation thereof, and adjudging and declaring that the spring in controversy is located on the lands of complainants and that they have legal title thereto, and adjudging and declaring that the complainants are the legal owners of the land lying between the fence at the inside edge of the right of way and the bank of the creek, and taxing the defendants with one-half the costs, defendants pray an appeal to the next term of the Court of Civil Appeals sitting at Knoxville, Tennessee on the 1st Monday in May, 1920, which appeal was granted upon the filing of a bond within thirty days."

And further:

"From the foregoing decree of the court finding and adjudging that the defendants have by use of water for more than twenty years by themselves and through those under whom the claim, and under a claim of right acquired an easement in said spring for the use of water from the same for domestic purposes, and the right on ingress and egress to and from the same, and which easement is one running with defendants' land, and from that part of said decree adjudging that the pay one-half the costs of the cause, complainants except, and pray to be allowed to rely on said exceptions, and from said portions of said decree and findings of fact complainants pray an appeal to the next term of the Court of Civil Appeals sitting at Knoxville, Tennessee on the 1st Monday in May, 1920, which appeal is by the court granted upon the complainants filing with the clerk of this court proper bond within thirty days."

The foregoing is the statement of the decree regarding the appeal, and the decree itself being specific as to what was appealed from, left the injunctive feature of the decree in full force and effect in the chancery court. While the final determination of the decree in the Supreme Court might by its effect have terminated the injunctive feature of the decree in the court below, still, as it

affirmed the decree below, it left the jurisdiction in the court below to enforce a proper observance of this feature of the decree.

It is said that where an injunction has been dissolved, it cannot be revived except by a new exercise of judicial power; that the authority of the English courts to preserve the subject matter of litigation pending the final determination of the controversy is said to be settled beyond controversy, and in this country the right to continue in force a preliminary injunction to maintain the status quo of the subject matter pending the appeal, even though the right to a perpetual injunction is denied by the judgment, is recognized. R. C. L., Vol. 14, page 463, sec. 163, citing Pasadena v. Superior Court, 157 Calif., 781.

It would seem, therefore, that where the injunction is made perpetual, as in the foregoing decree, it would continue, notwithstanding the appeal, as a means of protecting the interests sought to be provided for.

It is insisted in this case, virtually, that the appeal transferred the whole case to the Supreme Court, and that the complainant petitioner's remedy for a violation of the injunction, if he had any, was by petition to the Supreme Court, as it was contended that the decree of that court alone finally furnished authority for the injunction, and if that is true the authorities cited to sustain the position are in point. But if as insisted by the petitioner the injunctive feature of the decree below remained in force notwithstanding the appeal, then the petition was properly addressed to the court below, where the injunction was violated. We think, therefore, that the complainant petitioner's contention is right as to this point.

We think that the jurisdiction of the Chancellor to allow the decree to be entered nunc pro tunc cannot be questioned, and that so far as the purposes of this cause are concerned it took effect by relation, so as to make the defendant guilty of a violation of the injunction, which inhibited him from in any wise interfering with complainant in the use of the water or obstructing the way to the spring. We think the proof shows that the fences erected after the passage of the decree were an obstruction to the spring. It was the defendant's insistence that the decree had no validity until it was entered of record, and, not having been entered of record until after the erection of the fence, that he could not be guilty of a contempt in their erection. We think his right to make this question is concluded by his own pleading showing that some sort of a decree was rendered, and that it was appealed from, and afterwards affirmed.

"Where facts sufficient to constitute an estoppel appear in the previous pleadings, the estoppel need not be especially pleaded,

but may be taken advantage of by demurrer.'' Ency. Pl. & Pr., Vol. 8, page 9.

Surely where it appears by answer, which requires no replication to make an issue under our statute, it should be made available as showing that one is concluded by a decree subsequently rendered in the same case and set out in the decree of affirmance, though not having been actually entered on the minutes in the court below. The affirmance becomes the law of that case.

The matter of the failure to enter the decree upon the minutes was irregular and might have been sufficient to have reversed the case had the point been called to the attention of the court, but failing to do so it is too late now to say it was not entered of record in the court below. This should be considered as waived.

''Under systems of pleading which permit no replication the rules requiring estoppel to be pleaded in avoidance of defense has no application, and if plaintiff claims an estoppel against the defenses set up in the answer, he is entitled to give evidence concerning them without special pleading.'' C. J., Vol. 21, page 1245, sec. 251.

''And where there was no opportunity to plead an estoppel, it may be shown in evidence without having pleaded it.'' Ib., sec. 250, page 1245, citing a case from Idaho of Powell-Sanders Co. v. Carssow, 28 Idaho, 201, which holds that:

''Where the necessity of proving an estoppel appears only after answer, the necessity of alleging the estoppel in the complaint is obviated under a statute providing that a statement of any new matter in the answer in avoidance or constituting a defense or counterclaim must on the trial be deemed controverted by the opposite party.''

The foregoing are exceptions to the general rule requiring estoppels to be specially pleaded.

Should the question be open to the defendant, and should he not be estopped, he insists that there is no valid decree in the original cause, and that there could be no contempt or violation of any invalid or void decree. This insistence would be good if the decree was not merely irregular but void, but we do not think this decree, though not entered, as we have seen, was void. It became valid and binding upon affirmance, as to that part appealed from, and as confirmatory of that part unappealed from, if its final character was, or had been liable to be defeated by the action of the Supreme Court in relations to any question involved in the appeal upon which the injunctive feature was grounded. The nunc pro tunc order is only material as preserving evidence of that portion of the decree unappealed from, which it is alleged forms the basis for the jurisdiction of the lower court to entertain

the petition for contempt. For if this feature of the decree was not left in the chancery court, but was carried to the Supreme Court by the appeal, then the position of defendants would be well taken and the jurisdiction would be in the Supreme Court alone for such action, as the case was not remanded.

If the injunctive feature of the decree was not affected by the specific appeal, then the nunc pro tunc decree took effect by relation, as the parties to it were bound, even though intervening rights of innocent third parties could not be affected by its entry. It is void as to such who have no notice until its actual entry, though not void for all purposes.

The case of State v. True, 116 Tenn., 294, dealt with the disposition of school funds, which neither contract nor decree could dispose of contrary to the statute, and is not in point.

In the case of Fraker v. Brazelton, 80 Tenn., (12 Lea), 280, the the question was the right to rescind the purchase of a piece of land and to recover amount paid thereon, and for improvements. The Chancellor decreed the rescision, and before enrollment and while in the breast of the court, on petition tendering an unexceptionable deed, it was held in time, because in the absence of fraud and before final decree it was held that before enrollment it was still in the breast of the court.

The case of Mutual Life Ins. Co. v. Implement & Vehicle Co., 138 Tenn., 38-39, was a contest between the judgment lien and that of a mortgage filed for record before the entry of any decree in the court below upon the procedendo. The court held the mortgage lien superior, and while the language used in these cases that "the action of a court is not effective for any purpose until a record thereof has been spread upon the minutes of the court, and the minutes have been duly authenticated," would seem to justify the contention of the defendant in this case, that part of the statement quoted is dictum, not necessary for the determination in either one of those cases.

In the case under investigation the decree of the special Chancellor had been passed, the court adjourned, and whatever effect it had it was no longer in the breast of the court. It was final. Nothing could be added to or taken from it, but the right to have the exact decree if validly ascertainable entered nunc pro tunc shows that it was not void or ineffective for any purpose. Several exigencies might have defeated this right, but in this case none of them did. The special Chancellor was living, and this decree, though signed by him after the filing of the petition in this case, validly established, was by order and permission of the court entered nunc pro tunc at the September term, 1922. Defendant excepted to the entry, but no bill of exceptions was

filed at the time, and the contempt proceeding continued and tried at a subsequent term. The special Chancellor had not gone out of office to all intents and purposes until his work in the trial of this case had been finished.

"The minutes or records of courts are generally required to be authenticated by the signature of the judge, but failure of the judge to sign the record as directed by statute does not make the judgment a nullity; it is at most irregular and erroneous, but not void." C. J., Vol. 34, page 58, sec. 6.

As sustaining this rule the case of Beltman v. Hopkins, 109 Ind., 177, is cited, which is digested as holding the fact that a special judge has failed to sign the record of a final judgment during the term at which such judgment was rendered will not render his judgment void, since the authority of the special judge continues until the final determination of the case for which he was chosen, and this includes not only the rendition but the entry and signature of the judgment.

In Note C to same section, the case of Van Fleet v. Phillips, 11 Iowa, page 558, is cited as holding that a statute directing time of signature was directory only, which is believed to be the case of our statute, so that the signature of the special judge even to the record might have been made at any time after the adjournment. But this order or decree was only an omission from the records which were signed, and the effect of the entry of the decree nunc pro tunc would be to supply the omitted portion of the signed record, thus effecting his attestation thereto. However, it seems that his signature, so adjudged to be, appears likewise upon the supplied part of the decree as well. The question therefore is, was the defendant, if he can make the question, bound by that portion of the injunctive feature of the decree so as to be liable for a contempt in its violation during the time the same remained unentered? We think he was. Even during such time it bound parties and privies.

"Except as to the rights of third parties, a judgment nunc pro tunc is retrospective and has the same force and effect, to all intents and purposes, as if it had been entered at the time when the judgment was originally rendered. It aids and cures proceedings which otherwise would be defective and irregular for want of a proper entry of judgment to sustain them. But the effects of such entry by relation will be confined to the rights and interests of the original parties, and it will not be allowed to prejudice the intervening rights of third parties without notice." C. J., Vol. 34, page 81, sec. 222.

There can be no queston from the proof that the building of the two fences across the ingress and egress to the spring was a vio-

lation of the injunction. The defendant does not deny that he built the fences, and cannot deny that it does to some extent obstruct the ingress and egress. His insistence virtually is, that notwithstanding the way over the complainant petitioner's land is only a right· of way, that he has the right to fence it for his own convenience, and that, having such right, the question is whether he unreasonably exercised it in the obstruction. We do not think this is the question. In the first place there appears to be no definite description in the record of this right of way, so that a court could determine that the fences so constructed are actually upon it. In the second place all the defendant has is a right of way over the complainant petitioner's land, and he should be content if complainant petitioner does not obstruct it in any way. Ordinarily the right to build fences or to place gates is in the owner of the servient estate, and the question of reasonableness is one he might invoke in the restriction of the easement; so that to say the least of it it will not be presumed that the right to fence it is at all necessary to its enjoyment, or is a part of it, which right must necessarily encroach upon the rights of the owner of the fee.

So it appears that the building of these two fences as they were constructed, was without authority and in violation of the injunction, and the defendant was properly attached. The Chancellor, however, concluded that there was no aggravation in the matter, and was content to assess a nominal fine. On the whole we conclude that there is no merit in any of the assignments of error, and they are overruled. The decree of the Chancellor is affirmed, with costs against appellee and his security.

Portrum and Thompson, JJ., concur.