YOUNG et ux. v. LITTLE'S UNKNOWN HEIRS.

LITTLETON v. YOUNG et al.—232 S. W. (2d) 614.

Eastern Section. December 1, 1949.

Petition for Certiorari denied by Supreme Court, April 29, 1950.

40

Cassell & McDavid, of Harriman, for complainants.

Stone & Qualls, and D. O. Harris, of Harriman, R. H. Ward and James F. Littleton, both of Kingston, for defendants.

HOWARD, J. Mrs. Margaret Byrd Little died intestate in Roane County, Tennessee, seized and possessed of three lots in the City of Harriman, Tennessee, upon

which there was located a residence containing approximately seven rooms. The value of the three lots and residence was approximately $4,000.

A. F. Littleton was appointed and qualified as administrator of the estate of Margaret Little some time during the year 1930 and from that time on until 1943 the said Littleton, as administrator and agent for certain known heirs of Margaret Little, collected rents on the property and accounted to Emma Stephenson, a daughter of Margaret Little, for the proceeds of said rent collections until the death of Emma Stephenson in 1940. Thereafter Littleton accounted to Grace Stephenson Zeh for the rent collections until September or October of 1943.

At the request of Emma Stephenson no effort was made by Littleton to pay any state, county or city taxes on said real estate.

In March, 1938, a suit was filed in Chancery Court of Roane County, Tennessee, for the collection of delinquent state and county taxes on said property, said cause being styled State of Tennessee ex rel. v. Ed Burnett et al., No. 4766 in said Court. This cause proceeded through various references and reports and on January 14, 1939 the property involved herein was sold under the decree of the Chancery Court and bought in by the state for the delinquent taxes due it, and said sale was duly confirmed by the Chancellor.

Apparently Littleton continued to rent the property and collect rents thereon, accounting to Emma Stephenson and later to Grace Zeh, for the net collections. Some time around 1939 or 1940 the said property was rented to C. K. Young and wife, Madeline Young, complainants herein, at a monthly rent of $25 per month.

During the month of August 1943 the Youngs and Littleton were both negotiating with Grace Zeh, of Arling-

ton, Virginia, who claimed to represent all of the "known heirs" of Margaret Little, seeking to purchase the real estate from her and her associates. Littleton seems to have made an offer of $1,000 or $1,500 for the purchase of the interest of Grace Zeh and her associates and tendered part payment of this amount to Mrs. Zeh. About the same time Mrs. Zeh made an agreement with the Youngs whereby they were to pay $4,000 for the property, out of which sum all delinquent taxes were to be paid and the balance held in escrow by B. L. Sadler, President of the First National Bank of Harriman, to be paid to Mrs. Zeh upon delivery of a quitclaim deed to the property, properly executed and acknowledged by all of the "known heirs" of Margaret Little.

On or about September 15, 1943 Grace Zeh sent to B. L. Sadler the deed, which was dated September 10, 1943, and was executed and acknowledged by Grace Zeh, Margaret Stephenson, Louise Stephenson Prog and Byrd Stephenson and also by Grace Zeh as attorney for Mary Jo Black. A photostatic copy of the power of attorney giving Grace Zeh authority to execute the deed on behalf of Mary Jo Black was attached to the deed. The above named appear to be the sole legal heirs of the said Emma Byrd Stephenson. This deed was also executed and acknowledged by Bruce Faulkner, a legal heir of Mary Byrd Faulkner, another sister of the deceased Margaret Little.

It developed in the proof in this cause that Mary Byrd Faulkner had another son, George Faulkner, who had died intestate leaving surviving heirs. George Faulkner had three sons, two of whom predeceased him and the other died without issue so that Edna Faulkner, wife of the deceased George Faulkner, claimed as sole legal heir of her husband.

Shortly after the deed was deposited in escrow with B. L. Sadler, C. K. Young had his attorney, Judge R. B. Cassell, examine the deed and give an opinion as to the title to the property and at Judge Cassell's suggestion Young requested Grace Zeh to secure affidavits from the "known heirs" who had executed the deed, which affidavits were to the effect that they were the only legal heirs of Margaret Little. They also requested, at the suggestion of Judge Cassell that the original power of attorney authorizing Grace Zeh to execute the deed for Mary Jo Black be sent to him for recording in the Register's Office of Roane County.

Grace Zeh replied to this request stating that she could not secure the affidavits requested and that she understood there were probably some other unknown heirs; but she did promise to forward the original power of attorney, which was never done.

Thereafter Young requested that Grace Zeh and her associates join with him in filing court proceedings against the unknown heirs of Margaret Little in order to clear up the title to the property and in order that Young might receive good title to the property under the deed which had been executed. Young requested that the expense of the court proceedings be deducted from the $4,000 purchase price. Grace Zeh refused to join in this proceeding and refused that any further deduction be made from the purchase price other than the taxes which she had already agreed to pay out of the purchase price. Mrs. Zeh indicated that she and her associates were becoming impatient about the delay in closing the transaction and stated that unless the deal was consummated by November 5, 1943 that the deed held in escrow by B. L. Sadler be returned to her and cancelled so that she might

be free to negotiate with other prospective purchasers of the property.

On October 30, 1943 Young paid delinquent taxes and expenses in the following amounts:

W. B. Ladd, Clerk and Master, for State and
County taxes (1936 to 1941) ................$ 733.81
W. E. Billingsley, Trustee, State and County
Taxes (1942 to 1943) ...................... 151.54
City of Harriman, City Taxes (1938 to 1943) .. 483.35
Revenue Stamps on Deed ................... 4.40
                                          ─────────
      Total ...........................$1,373.10

Young then paid the balance of $2,626.90 to B. L. Sadler, as escrow agent for Grace Zeh and associates and the deed from Grace Zeh et al. to C. K. Young was delivered to him and recorded in the Register's Office of Roane County, Tennessee.

On November 4, 1943 the First National Bank of Harriman issued its cashier's check in favor of Mrs. Grace Zeh in the amount of $2,363.31. The difference between the amount of the cashier's check and the amount paid to Sadler by Young represents the sum of $226.99 which appears to have been deducted at the request of Littleton, as compensation for his services in acting as "agent and legal representative" of Mrs. Zeh and the other "known heirs" of Margaret Little. The cashier's check in favor of Mrs. Zeh was never delivered to her. It appears from the record that it was held in the bank temporarily at the request of Littleton and later was held by the bank under an order of injunction of the Chancery Court of Roane County.

On November 8, 1943, Young procured a tax deed to said property from the Commissioner of Finance and Taxation, which seems to have been in proper form and

approved by the Governor and the Attorney General and which deed was recorded in the Register's Office of Roane County, Tennessee on November 30, 1943.

On November 15, 1943 C. K. Young and wife, Madeline Young, filed the original bill in this cause in the Chancery Court of Roane County, being styled C. K. Young et ux., against the Unknown Heirs of Margaret B. Little, deceased, No. 5304 in said Court.

The substance of the bill in this cause was that the Youngs had acquired the entire title to said real estate by virtue of their purchase from Grace Zeh and her associates, the only "known heirs" of Margaret Little, deceased, and also by virtue of the tax deed from the Commissioner of Finance and Taxation, and it was prayed that the unknown heirs of Margaret Little be made parties by publication and that any claims that might be made on behalf of any unknown heirs be declared void and spurious and removed as a cloud upon their title.

It is clear that Littleton had full knowledge of all of these proceedings. This appears in a letter written by him to Charles T. Byrd, dated December 7, 1943, and filed as an exhibit in this cause. It also appears clearly from Littleton's own testimony in which he states that he collected rent on the property as agent for Grace Zeh until about the middle of September 1943, and that thereafter Young tendered the rent to him until the middle of October, 1943, but that he refused to accept the same.

After the original bill was filed in cause No. 5304, Littleton made strenuous efforts to obtain quitclaim deeds from the other "unknown heirs" of Margaret Little. According to Littleton's testimony he secured some deeds by mail, some by telephone and some by airplane trips made during his vacation period, and as a result of these efforts he did secure and has filed in the record of these con-

solidated causes 29 quitclaim deeds from various heirs of Margaret Little.

It seems to be undisputed that Margaret Little had 11 brothers and sisters, one of whom died without issue. It is conceded by all parties that this deceased brother or sister left no legal heirs.

It also seems to be undisputed that at the time of her death there were 10 brothers and sisters (or their descendants) who stood in the position of legal heirs of the said Margaret Little deceased.

The original deed from Grace Zeh et al. to C. K. Young is executed by all the heirs of the one sister Emma Byrd Stephenson and also the only living son of another sister Mary Byrd Faulkner.

The various deeds to A. F. Littleton appear to be executed by all of the other eight brothers and sisters of Margaret Little, or their descendants, except there seems to be one child of Robert L. Byrd, who is an incompetent and a ward of the State of Kentucky. Littleton also secured a deed from Edna Faulkner, widow of George Faulkner, deceased, who was one of the two sons of Mary Byrd Faulkner and a brother of Bruce Faulkner who executed the original deed to Young.

On December 2, 1943, A. F. Littleton filed his original bill in the Chancery Court of Roane County styled A. F. Littleton v. C. K. Young, et al., No. 5309 in said Court. Complainant Littleton alleged that he was agent and legal representative of nearly all of the eight groups of heirs of Margaret Little who had not joined in the deed to Young and that he brought his suit on their behalf.

It was alleged that Grace Zeh and her associates had falsely represented that they were the sole heirs of Margaret Little and as such had negotiated a sale of the prop-

erty to Young and had executed a deed to him professing to convey the entire property to him.

The bill further alleged that the $4,000 purchase price paid by Young was a fair price for the entire property but that the First National Bank of Harriman had issued a cashier's check payable to Mrs. Grace Zeh in the amount of $2,363.31, which represented the purchase price (less taxes) of the entire property, and that if said check was cashed it would result that the heirs whom Littleton represented and who were entitled to approximately $\frac{9}{10}$ of the proceeds of the sale of the property, would suffer irreparable injury.

The bill prayed for a sale for partition and for injunction to enjoin the bank from paying said cashier's check to Mrs. Zeh. The injunction was granted.

On January 7, 1944 A. F. Littleton, as vendee of a large number of the "unknown heirs of Margaret Little" entered his appearance as a defendant to the original bill of C. K. Young et ux. v. the Unknown Heirs of Margaret Little, No. 5304, and filed an answer and cross-bill.

In his answer Littleton specifically sets out the names, addresses and relationship of the various heirs of Margaret Little to the extent of his knowledge.

It affirmatively appears that Littleton had purchased the interest of most of these "unknown heirs" at the time of the filing of this answer and cross-bill with the exception of the interest of: Nellie Byrd, a person of unsound mind, Hope Horton, a minor, Richmond Horton, a minor.

These three were descendants of Robert L. Byrd, a deceased brother of Margaret Little. Subsequently Hope Horton executed a deed to Littleton so it may be presumed that she has become of age.

Littleton, by way of cross-bill prayed that the property be sold for partition and that Cause No. 5304 and Cause No. 5309 be consolidated.

James F. Littleton was appointed guardian ad litem for the incompetent Nellie Byrd, and for the minor Richmond Horton, and filed his answer as such so that the parties shown by the record to be under disability were before the court.

The Youngs in answer to Littleton's cross-bill stated that they believed that they were getting good title to the entire property when they purchased it from Grace Zeh et al., but that since then it appeared that there were other heirs and they sought by way of cross-bill to rescind the entire transaction in the event that they could not obtain title to the whole property. They offered to reconvey the property to Mrs. Zeh and her associates upon repayment of the money they had paid out and they also prayed for an injunction to enjoin the payment of the $2,363.31 check to Mrs. Zeh.

They accused Littleton of having participated in the fraud against them and sought to hold him personally liable for any loss or expense they might sustain.

It appears that Mrs. Ada B. Marsh had made a loan of $4,000 to the Youngs to consummate the purchase of the property from Mrs. Zeh and she had taken what purported to be a first mortgage on the property from the Youngs to secure the payment of such loan. She is claiming a first lien on the property for the satisfaction of her loan.

On August 19, 1948, Littleton made application to file an amended and supplemental answer and cross-bill to the original bill of Youngs (cause No. 5304), by the terms of which he sought to attack the validity of the tax deed of November 8, 1943, from the Commissioner of Finance

and Taxation to Youngs. This amendment was objected to on the grounds that it came too late; that cross complainant sought to take a directly opposite attitude from his original one; and that he sought to attack the validity of a tax deed without complying with the statutory conditions precedent to making such attack.

On disallowing the amendment the Chancellor said: "The application to file the amended and supplemental cross-bill, or answer and cross-bill, comes too late. As above stated, the case has been partially heard and no valid reason is given for not filing the amended and supplemental cross-bill sooner."

█ In disallowing the amendment the Chancellor did not abuse his discretion since the amendment was not supported by an affidavit excusing the delay, nor was the amendment accompanied by an offer to pay the costs or submit to the terms of the court.

█ The application to amend should be made at the first opportunity after the applicant has learned of the necessity of the amendment or of the existence of the facts upon which his application is based, and should be made before the court acts on the particular pleading sought to be amended; and the application to amend should be accompanied with an offer to pay such costs or to comply with such other terms and requirements the court may impose. When the foregoing rules are complied with, the applicant is ordinarily entitled, as a matter of right, to make the amendment desired; otherwise the granting of the amendment becomes a matter of discretion, and the appellate courts will not, ordinarily, undertake to revise that discretion. Sec. 428, Gibson's Suits in Chancery, 4th Ed.

The deed from Louise Stephenson Prog et al. to C. K. Young reads as follows:

"This deed made this tenth day of September in the year one thousand nine hundred and forty-three by and between Louise Stephenson Prog, . . ., parties of the first part, C. K. Young of Harriman, Tennessee, party of the second part:

"Witnesseth, that the parties of the first part, for and in consideration of $4,000.00, Four thousand and no/100ths Dollars have granted, released, and forever quit-claimed, and do hereby grant, release, and forever quit-claim unto the party of the second part the following described land and premises, situate, lying and being in the First Civil District of Roane County, Tennessee, and distinguished as Lots number five hundred ten, five hundred twelve, five hundred fourteen in Block number fifty-five on Trenton Street in the town of Harriman, Tennessee, Roane County, as the same are shown on the plat of the said town of Harriman recorded in the Register's Office at Kingston, Tennessee, together with all and singular the improvements, ways; easements, rights, privileges, and appurtenances to the same belonging, or in anywise appertaining, and all the estate, right, title, interest and claim, either at law or in equity, or otherwise however, of the parties of the first part, of, in, to, or out of the said land and premises.

"To have and to hold, the above released land and premises unto and to the use of the party of the second part his heirs and assigns forever."

The Chancellor in his memorandum opinion reached the following conclusion regarding the deed: "That the deed of Sept. 10, 1943 from Louise Stephenson Prog and others to C. K. Young, purports to convey the entire property. It is more than a mere quitclaim deed under Sec. 7607 Williams' Annotated Code. When complain-

ants went into possession, under this deed, they were claiming the property adversely to all persons."

We think that the Chancellor correctly held that the deed was more than a mere quitclaim, and that the deed purported to convey the land itself. A deed, the granting clause of which employs the words, "granted, released, and forever quitclaimed, and do hereby grant, release, and forever quitclaim . . ., together with all and singular the improvements, ways; easements, rights, privileges, and appurtenances to the same belonging, or in anywise appertaining, and all the estate, right, title, interest and claim, either at law or in equity, or otherwise however, of the parties of the first part, of, in, to, or out of the said land and premises," is not a mere quitclaim deed, but is a color of title, the word "grant" being equivalent to the word "convey". Hitt v. Caney Fork Gulf Coal Co., 124 Tenn. 334, 139 S. W. 693; Southern Iron & Coal Co. v. Schwoon, 124 Tenn. 176, 135 S. W. 785; 16 A. J. Sec. 230, 565; 3 A. L. R. 953.

The Chancellor further decreed as follows: "Some, if not all, of the purchases made by cross-complainant were made after he had learned that complainant was claiming the property in question under the deeds from Louise Stephenson Prog and others, and the Commissioner of Finance and Taxation, and such being the case, they were champertous."

As a matter of fact all of the deeds were secured by Littleton after he learned of the Young's claims and therefore all of the deeds are champertous and void. Code Secs. 7823, 7824, 7827; Jones v. Moseley, 29 Tenn. App. 559, 198 S. W. (2d) 652; Bullard v. Copps, 21 Tenn. 409, 37 Am. Dec. 561; Stephenson v. Richmond, 30 Tenn. 591; Kincaid v. Meadows, 40 Tenn. 188; Fain v. Headerick,

44 Tenn. 327; Green v. Cumberland Coal & Coke Co., 110 Tenn. 35, 72 S. W. 459.

The Chancellor thereupon decreed that title to said real estate be vested absolutely in fee simple in said C. K. Young and wife Madeline Young and that all other claims of heirs "known" and "unknown" and those of A. F. Littleton, against the property be removed as a cloud on said title of C. K. Young and wife.

The Chancellor dismissed the cross-bill filed by C. K. Young and wife seeking rescission of the purchase of the land. We think this was proper as the record does not disclose facts which would entitle the Youngs to a rescission of the contract.

■ We are satisfied that C. K. Young and wife Madeline Young secured the entire fee simple title to the property involved by virtue of the deed from the "Zeh Group" and by virtue of the deed from the Commissioner of Finance and Taxation.

The case of West v. Jackson, 29 Tenn. App. 102, 186 S. W. (2d) 915, relied upon by counsel for Littleton as sustaining his proposition in respect to the invalidity of the tax deed is entirely different from the instant case. In that case West and his wife were actually occupying the property upon which delinquent taxes had accrued and the record in the tax proceeding shows that no process was issued or served upon them and they had no notice of the proceedings which culminated in the tax sale; that no pro confesso decree was ever entered in the case and that the tax proceedings were absolutely void.

In the instant case the record shows that the owners of the property were non-resident heirs of the deceased Margaret Little, and by specific instructions from the "interested heirs" the administrator of the estate of Margaret Little and the agent for the non-resident heirs

failed to pay the taxes but collected rents and remitted same to such "interested heirs."

The record shows that publication was made and proof of publication filed in the tax proceedings and thereafter pro confesso decree was entered against such non-residents, order of sale was entered and the sale was made and properly reported by the Clerk and Master to the court. This sale was confirmed and title to the property vested in the State of Tennessee by virtue of the decree or confirmation entered in January, 1939.

All of these facts were specifically brought to the attention of A. F. Littleton, who was acting as administrator and also agent of the non-resident heirs by the filing of the bill in this cause on November 15, 1943, and yet no attempt was made to attack the validity of the deed from the Commissioner of Finance and Taxation until the application to file supplemental answer and cross-bill on behalf of A. P. Littleton in August of 1948.

■ ■ As previously pointed out, we think that the application to file the supplemental answer and cross-bill came too late under the rules of the court. Furthermore, the relief sought by the amendment was barred by the three year limitation as set out in Code Section 1610. Moreover, the attempted attack on the validity of the tax title was ineffective by reason of Code Section 1611, which provides as follows: "No suit shall be commenced in any court of the state to invalidate any tax title to land until the party suing shall have paid or tendered to the clerk of the court where the suit is brought the amount of the bid and all taxes subsequently accrued, with interest and charges as herein provided."

■ The contention that the Youngs, upon acquiring the interest of the "Zeh" group became tenants in common with the other "unknown heirs" of Margaret Little

cannot be sustained. Whether the deed from the "Zeh group" was strictly a quitclaim deed or whether it was more than a quitclaim and purported to convey the entire estate, Littleton was promptly put on notice that the Youngs were claiming the entire estate under said deed and under the tax deed and thereafter he refused to accept rent tendered by the Youngs for the period of September 15th to October 15, 1943, and he, as agent for the other heirs, was certainly put on notice that the Youngs were claiming adversely to all the other heirs of Margaret Little. This clearly terminated any possibility of a relationship as tenants in common between the Youngs and the other heirs. Bullard v. Copps, 21 Tenn. 409, supra; Stephenson v. Richmond, 30 Tenn. 591, supra; 10 Am. Jur. Sec. 19, 564; 14 C. J. S., Champerty and Maintenance, Sec. 31, page 371.

The question of the rights of any of the other heirs to participate in $2,626.90 representing the balance of the purchase price in the hands of B. L. Sadler as escrow agent was expressly reserved by the Chancellor and the cause will have to be remanded for further proceedings in that regard.

It will be observed that the heirs of Ellen Byrd Drake and James Byrd were before the court by publication, but are not represented by counsel. There is no evidence as to whether these heirs are of age or whether or not they are entitled to any part of the funds in court.

The Chancellor reserved any ruling as to whether Littleton was entitled to be subrogated to the rights of the heirs from whom he had purchased the champertous deeds herein mentioned. So it is neither necessary nor proper that we express an opinion on this question.

It results that upon all the questions herein considered the action of the Chancellor is affirmed and the cause will

be remanded for further proceedings in accordance with this opinion.

The costs of this suit will be taxed one-half against C. K. Young and wife and the other one-half against A. F. Littleton and the sureties upon his appeal bond.