**IN THE COURT OF APPEALS OF TENNESSEE**

**AT KNOXVILLE**

**FILED**

**February 4, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

E1999-01605-COA-R3-CV

| | |
|---|---|
| HARLEY WHITE and WILLIAM MACK WHITE, | ) C/A NO. 03A01-9908-CH-00288 |
| | ) |
| | ) COCKE CHANCERY |
| Appellees, | ) |
| | ) HON. TELFORD E. FORGETY, JR., |
| vs. | ) CHANCELLOR |
| | ) |
| GUY N. JONES, and wife, VIOLET | ) |
| E. JONES, | ) AFFIRMED AND |
| | ) REMANDED |
| Appellants. | |

THOMAS V. TESTERMAN and ROY T. CAMPBELL, JR., Newport, for Appellees.

ROBERT H. BAILEY, Greeneville, for Appellants.

**O P I N I O N**

Franks, J.

This is a dispute between adjoining property owners over a tract of land which the Chancellor determined was owned by plaintiffs.

Plaintiffs claim that the disputed 14 acre tract was included in deed descriptions in their chain of title as well as the chain of title of defendants, and plaintiffs were unaware until shortly before they brought this action, that anyone else was claiming ownership. The land in question is primarily wooded.

The deeds show that certain property was owned by plaintiffs' parents

since 1947, and was conveyed to plaintiffs by their mother in 1989, but the description of the property is vague and difficult to follow. At trial, plaintiffs testified their family bought their land (including the tract in question) at auction in 1947, and a fence existed on the property at the time, which plaintiffs believed was the property line with defendants' land. They testified in detail about always exercising ownership over the land, and that defendant Guy Jones came to see them in 1993 or 1994 and advised them that the property in question was up for sale, and enquired if plaintiffs were interested in buying it, whereupon they informed defendant that they already owned the property. Jones, in this case, affirmed that the conversation took place as plaintiffs said.

A witness for plaintiffs testified that he often used the property with the plaintiffs' permission, and that on one occasion he had to park on defendants' property because plaintiffs' road had washed out due to heavy rainfall. He recounted that defendant asked the witness what he was doing, and if he knew who owned the property, he replied that the Whites owned it, had given him permission to use it, and defendant acknowledged he was correct. Defendant did not refute this testimony.

Defendant testified that in 1993 or 1994, a Ms. Smelcer approached him about buying the property, which he later purchased. He also offered the testimony of the Cocke County Trustee, who stated that before 1970, plaintiffs only paid taxes on 38.5 acres, but after 1970, they paid taxes on 70 acres. He also testified that he had found some old tax receipts for Ms. Steele on a 25 acre tract, but could not determine if it had anything to do with the property in question.

Defendants also offered testimony from a timber cutter who testified

2

that he once cut timber for Fred Smelcer and had to take it out over another lady's farm. Another witness testified that he had lived on the Whites' land and was present at the auction in 1947, but it was his understanding that the Steeles, rather than the Whites owned the disputed property.

At the conclusion of the trial, the Chancellor determined that the Whites had used the property since 1947 and had been the only ones to pay taxes on it from 1970 to 1985. The Court also found that defendants' deed was champertous because Jones testified that he knew before he took a deed to the property that the Whites claimed ownership of the tract.

The Chancellor found the plaintiffs' evidence credible that they and their family had exercised control over the property from its purchase, and that they made their ownership of the property known, not only by inviting others to use it, but also by asserting that ownership to potential trespassers and potential buyers. The plaintiffs offered evidence that their use of the property was actual, visible, continuous, notorious and exclusive and lasted for well over the required period of time to establish ownership. The evidence does not preponderate against the Trial Judge's finding on this issue. *See Panter v. Miller*, 698 S.W.2d 634 (Tenn. Ct. App. 1985).

The Trial Court also held that the deed to Jones was a champertous deed. Our statutes dealing with champerty provide:

> No person shall agree to buy, or to bargain or sell any pretended right or title in lands or tenements, or any interest in such pretended right or title.

> Any such agreement, bargain, sale, promise, covenant, or grant

3

shall be utterly void, where the seller has not personally, or by the seller's agent or tenant, or the seller's ancestor, been in actual possession of the lands or tenements, or of the reversion or remainder, or taken the rents or profits for one (1) whole year next before the sale.

Tenn. Code Ann. §§ 66-4-201 and 202.

The case of *Davidson v. Foley*, 414 S.W.2d 123 (Tenn. Ct. App. 1966), is instructive on this issue, because in that case this Court ruled that the defendant had established adverse possession to the property in dispute, and "it necessarily follows" that the deed which the plaintiffs were claiming title under was champertous and void as to the parcel adversely held. *See Young v. Little's Unknown Heirs*, 232 S.W.2d 614 (Tenn. Ct. App. 1949). The evidence in this case establishes that defendant had notice of the adverse claim and the Trial Court having found that plaintiffs adversely possessed the land, the finding that defendants' deed was champertous would necessarily follow.

We affirm the judgment of the Trial Court and remand at appellants' cost.

_____
Herschel P. Franks, J.

CONCUR:


_____
Charles D. Susano, Jr., J.

4

_____
D. Michael Swiney, J.