PAUL R. PICERNE *et al. vs.* ABRAHAM L. BOTVIN *et al.*

MARCH 3, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is a bill in equity to enjoin the respondents from trespassing on complainants' premises located on Olney street in the city of Providence. The answer alleges, among other things, that the respondents had the right to use, both on foot and with vehicles, a certain driveway on those premises in order to reach the northerly part of their land, which right was reserved in a deed from a common grantor. The cause was heard in the superior court on bill, answer and proof. A final decree was thereafter entered granting to the respondents the use of the driveway as therein described but enjoining them from crossing any other portion of complainants' land to reach the northerly part of respondents' land as prayed for in the bill. The cause is before us solely on respondents' appeal from that decree.

The complainants, who did not appeal from the decree, now concede respondents' right to pass and repass, on foot and with vehicles, over a horseshoe-shaped driveway de-

scribed in the decree and shown on a plan annexed thereto and marked exhibit A. However, they seriously dispute respondents' right to reach the northerly part of their land by traveling across a certain triangular piece of land hereinafter more particularly described.

The evidence shows that in 1935 the two properties involved in this cause were an undivided estate owned by Alice H. Manchester. As such, it remained practically unoccupied and without care for about seven years, with the result that the vacant land thereof became overgrown with weeds and other vegetation. In May 1942 she conveyed the westerly and greater portion of that estate to Lues Reiter, reserving to herself in the deed the right to use the driveway on those premises in the following language: "The grantor reserves to herself, her heirs and assigns, the right to pass and repass from Olney Street over the driveway now located on the above-described property and parallel with the easterly boundary thereof to reach the northerly part of other land now owned by the grantor, located easterly of the above-described premises." On December 24, 1946 Reiter conveyed the property to Paul R. Picerne, who, on December 31, 1946, conveyed it to himself and wife, the present complainants, as joint tenants. Each of the deeds in connection with these conveyances expressly refers to and incorporates therein as part thereof the reservation appearing in the original deed.

On July 31, 1947 Alice H. Manchester conveyed the easterly portion of her estate to Araham L. Botvin and Fannie Botvin, the respondents here, as joint tenants. This deed, after describing the property, proceeds as follows: "Together with the right to pass and re-pass from Olney Street over the driveway located on the premises described in that certain deed from Alice H. Manchester to Lues Reiter dated May 28, 1942 and recorded in Book 848 Page 222 in the Records of Deeds in said City of Providence, in order to reach the northerly part of the land hereinabove described."

Following these conveyances and before the bringing of the present proceedings in April 1948 the properties were extensively improved by their respective owners. The large house on complainants' premises, known as 214 Olney street, was converted into eight apartments, while a smaller house on respondents' land, known as 220 Olney street, was changed into five apartments. The complainants also located and curbed a horseshoe-shaped driveway as it appears on their comprehensive plan in evidence marked complainants' exhibit B, hereinafter called the plan.

We note here that the indicated scale of "¼"=1 ft." on that plan is obviously erroneous as the various measurements appearing thereon do not conform with that scale, but agree with a scale of ⅛"=1 ft. Further, in reading the plan with reference to the narrow question here at issue one must keep in mind that the conditions represented thereby, especially as to the driveway and its immediate surroundings, were those that existed at or about the time of the hearing in the superior court in 1949 and not those which obtained when the reservation under consideration was incorporated in the deed from Manchester to Reiter.

As the evidence is replete with descriptions and measurements from conflicting points of view and at different periods, our summary of the facts is intended to reflect the conditions that existed when the reservation was created. At that time there was, and still is, a substantial building with a large door in the center of its southerly side at the northeasterly corner of complainants' premises. This building, formerly used as a barn, is called "Brick garage" on the plan. The distance between its easterly side and the property line on that side, hereinafter referred to as the property line, was less than two feet.

At the time of the conveyance from Manchester to Reiter the horseshoe-shaped driveway, marked "Gravel driveway" on the plan, was *uncurbed* for its entire distance, the arc of the horseshoe being in front of the door of the garage. The two straight arms of the driveway, each about 7½ feet

wide, were some 48 feet apart at Olney street, the easterly one being adjacent to and parallel with the property line. All the land in front of the garage was uncared for and overgrown with weeds.

According to the plan the triangular area hereinbefore mentioned, which constitutes the core of the dispute between the parties, may be described generally as bounded on the north by the southeasterly part of the garage; on the east by the property line; and on the west by the arc of the easterly portion of the driveway. This area, called "Grass plot" on the plan, resembles an inverted right-angled triangle with its apex at the concrete walk in the rear of respondents' house. As we understand the complainants' position, they now contend that although the respondents may use the entire driveway for travel on foot or with vehicles as specified in the final decree and as shown on exhibit A attached thereto, the latter have no right to cross the grass plot in order to reach the northerly part of their land. It seems unnecessary to repeat here that no grass plot of the character above described was in existence when the reservation was made.

We will now give our attention to the condition of respondents' premises in 1942, with special reference to the northerly part thereof adjacent to the property line. Practically speaking, that property was divided into two parts. The front or southerly part, which is bounded on the south by Olney street, was almost completely occupied by the house thereon. Although there was a concrete walk along the easterly side of the house and also in the rear thereof, which latter portion of the walk extended to the property line, it was impossible to drive onto the northerly part of that property from any street.

The northerly part of the property, with which we are here directly concerned, had a sizable wooden building at its northeasterly corner, which building, formerly used as a tool shed, workshop, or stable, has been removed but its "Concrete Slab Floor" remains. See respondents' plan

marked exhibit 1. A smaller building, shown on complainants' plan (exhibit B) without designation, which in former years covered a manure pit, was and still is located at the extreme northwesterly corner. In front of this building there was a driveway about six feet wide running southerly for a considerable distance along and parallel with the property line to a point about where the apex of the triangular grass plot met the northerly line of the walk in the rear of respondents' house. This driveway was curbed on its easterly side and also along the concrete walk in the rear of respondents' house, the latter curb extending to the property line.

The evidence in connection with the plan makes two things reasonably clear: first, that the matter here in dispute centers around that part of the driveway on complainants' land adjacent to and parallel with the property line; and secondly, that the nature and extent of the reservation under consideration is to be determined by the language of the deed and the conditions existing in that immediate area when the reservation was created and not by present conditions. In the circumstances an incautious acceptance of the conditions appearing on the plan as those existing in 1942, especially if preceded or followed by a view of the properties in their present condition, as was done in the instant cause, is likely to create confusion and lead to a wrong conclusion. See *Vanderford* v. *Kettelle,* 75 R. I. 130.

The parties apparently agree that the language of the reservation is unambiguous. Since the cause was heard in the superior court on such a theory and no parol evidence tending to explain the reservation was considered by the trial justice, we also will treat the reservation as presenting no ambiguity as to its meaning. In such a situation it is well settled that the only concern of the court is to ascertain and give effect to the real intention of the parties as expressed in the reservation, illumined by the subject matter of the conveyance, the condition of the property and the surrounding circumstances existing at the time

the deed was executed, and the acts of the parties at and subsequent to such execution. *Gaddes* v. *Pawtucket Institution for Savings,* 33 R. I. 177; *Wholey Boiler Works* v. *Lewis,* 45 R. I. 441; *Allen* v. *Perrino,* 55 R. I. 353; *Sullivan* v. *Rhode Island Hospital Trust Co.,* 56 R. I. 253; *Davis Co.* v. *Shepard Co.,* 71 R. I. 499. Furthermore, it is undoubtedly true, as complainants contend, that in case of doubt the court will interpret the reservation most favorably to the grantees in the deed. See *Gaddes* v. *Pawtucket Institution for Savings, supra,* at page 187.

The evidence as to the extent of the use with vehicles of the driveway on complainants' premises parallel to the property line in connection with the other driveway on the westerly side of the northerly part of respondents' premises prior to and at the time of the conveyance from Manchester to Reiter, although meager, tends strongly to support the inference that the two driveways were used conjunctively when the premises were one estate. It is not reasonable to believe that Mrs. Manchester divided her estate and conveyed the larger portion thereof to Reiter without appreciating that, unless she reserved a right of way along the easterly property line of the premises so conveyed, the northerly part of the land retained by her would thereafter be completely inaccessible to vehicles. In our judgment, Mrs. Manchester's real purpose in reserving the right to use that portion of the driveway parallel to the property line was precisely to assure for "herself, her heirs and assigns" a reasonable means of access on foot and *with vehicles* to the northerly part of the property which she retained; and, further, that the language of such reservation, when fairly interpreted in the light of all the surrounding circumstances then existing, was sufficiently adequate to accomplish that purpose.

The right which Mrs. Manchester reserved in the Reiter deed is limited in scope, that is, to pass and repass over that part of the driveway *"parallel* with the easterly boundary thereof *to reach* the northerly part of other land"

retained by her. (italics ours) The complainants construe this language in a manner that in the circumstances is unwarranted. They first contend that the reservation was limited to travel on foot for the convenience of the various services that had to use the rear door of the house on respondents' land. This contention we dismiss as without merit because the word "driveway," unless restricted by appropriate language, in its natural and ordinary sense means "A passage along which carriages or animals may be driven." Webster's New International Dictionary (2d ed.) 1946, p. 788. Further, the clear purpose of the reservation was "to reach the northerly part of other land" retained by Mrs. Manchester and not merely to reach the rear of the house on the southerly part of those premises.

Complainants' main contention, however, is that even though the respondents can use that part of the driveway parallel to the property line for foot and vehicular travel, they are not entitled to proceed beyond the point where the arm of the driveway curves in a westerly direction away from the property line at or about a point opposite the walk in the rear of respondents' house because, according to the plan, they would then be trespassing on the grass plot between the driveway and the property line. This construction of the reservation clearly assumes that the grass plot, as indicated on the plan, was in existence when the reservation was made in 1942, which is not the case. At that time, as hereinbefore pointed out, the easterly arm of the driveway on complainants' land, the arc springing therefrom which runs in a westerly direction, and the triangular area now turned into a grass plot were all the same in character, as was also the adjoining portion of the other driveway on respondents' premises.

Under complainants' interpretation of the reservation, a vehicle could "reach," that is, go as far as the northerly part of respondents' land but it could not enter thereon. We believe that such interpretation gives too narrow a meaning to the word "reach" as used by Mrs. Manchester.

It is our opinion that, in view of the peculiar physical characteristics of her estate upon division as herein described, she intended to and actually did reserve for herself, her heirs and assigns a right of ingress to and egress from, on foot and with vehicles, the northerly part of the premises that she retained at the time of the conveyance to Reiter.

Complainants' interpretation of the reservation necessarily led to the serious difficulty that a vehicle which had been driven to a point in the driveway opposite the concrete walk in the rear of respondents' house could not readily leave the complainants' premises because the driveway as located by the latter was too narrow for a vehicle to turn around. The trial justice resolved that difficulty by allowing the respondents to drive over the *entire* remaining part of the horseshoe-shaped driveway for an exit on Olney street, thus taking a vehicle *away from* instead of *to* the northerly part of respondents' land. Furthermore, even though the complainants by failing to appeal cannot presently object to such interpretation, we observe that it does not comply with the express language of the reservation in the deed which limited the use of the driveway to that part thereof *parallel to the property line* to reach the northerly part of respondents' land. We are therefore of the opinion that in the circumstances the interpretation of the reservation urged by them and adopted by the trial justice is clearly erroneous as it deprives the grantees of the reserved right of ingress and egress with vehicles to and from such land. The complainants derive no benefit from the case of *Doody* v. *Spurr,* 315 Mass. 129, upon which they strongly rely, as the facts there are clearly distinguishable from those in the cause at bar.

It is our judgment that the language of the reservation shows that the common grantor in order to reach the northerly part of the premises which she retained had reserved unto herself, her heirs and assigns the right to travel from Olney street on foot and with vehicles over that part of the driveway adjacent to and parallel with the property

line, and also to continue over that portion of the complainants' land immediately to the north thereof at least to the extent which we describe as follows: Starting at a point on the property line where the northerly line of the concrete walk in the rear of respondents' house meets said property line as shown on the plan marked complainants' exhibit B; thence in a northerly direction along the property line, 12 feet; thence, turning a right angle and running in a westerly direction substantially parallel with the south side of the garage, 10.75 feet; and thence, turning an angle and running in a southerly direction substantially parallel to the property line until the line we are describing meets the westerly line of the driveway at a point where the width thereof is indicated on the plan as "10.75'." It follows therefore that the respondents, as successors to the ownership of the premises to which such right was reserved, are entitled to the same easement.

The foregoing description together with such other incidental relief necessary to effectuate the purpose of the reservation as herein construed may be cast, if necessary or desirable, in a more technical manner in a decree to be hereinafter entered.

The respondents' appeal is sustained, the decree appealed from is reversed, and on March 15, 1950, the parties may present to this court a form of decree, in accordance with this opinion, to be entered in the superior court.

*Edwards & Angell, John V. Kean,* for complainants.

*Semonoff & Semonoff, Judah C. Semonoff,* for respondents.