# FRUMIN et al. v. MAY.—251 S. W. (2d) 314.

Eastern Section. January 14, 1952.

Petition for Certiorari denied by Supreme Court, June 7, 1952.

Charles A. Noone, of Chattanooga, for appellants.

Charles C. Moore, of Chattanooga, for appellee.

HOWARD, J. Referring to the parties as they appeared below, the complainants, Abe Frumin and Jake Frumin, brothers and owners of the Dixie Machinery Company, Inc., filed this suit seeking a mandatory injunction to compel the defendant, William E. May, an adjacent landowner, to remove a wall and fence allegedly encroaching on their property, and also to compel the defendant to remove a fence and gate he had erected across an easement or right of way.

In their bill it is alleged in substance that since May 20, 1941, the complainants have owned the premises at 2313-15 Broad Street, in the City of Chattanooga, described as the South 50 feet of Lot 2, James Addition to Chattanooga, and that sometime prior to said date the defendant became the owner of the adjacent lot at 2311 Broad Street, described as the South 25 feet of the North 50 feet of the East 170 feet of Lot 2, James Addition, and that subsequent to October, 1943, the defendant moved an old fence located on the dividing line between said lots and relocated it approximately 2.9 feet on their property.

It is further alleged that prior to and on May 20, 1941, the defendant was also the owner of an easement or right

of way 8 feet in width, extending from the rear or west boundary line of his property across complainants' land west to Sidney Street; that on said date a written agreement was entered into between the parties whereby the defendant agreed to the closing of the 8 foot driveway and to release and quit-claim all his right, title and interest in said driveway in consideration of the grant to him of a new easement or right of way extending from the south side of his building at its western end across complainants' land (west) to Sidney Street; that without notice to them, the defendant erected a high metal fence and gate across the new right of way at the southern end of a rectangle section of said easement, thereby closing that portion of the easement and depriving them of the use thereof. Complainants prayed that after a hearing on the merits a mandatory injunction be granted requiring the defendant to remove all encroachments on their land, and that the defendant be required to open said gate and remove said fence obstructing their use of the easement.

Defendant in his answer denied that the fence and building encroached on the complainants' property 2.9 feet as alleged, and averred that the fence in question was built along the entire distance of his south line several years before complainants acquired title to their property; that complainants' deed was champertous and void if it included any part of the land north of said fence, and he relied upon and plead 7 years continuous adverse possession. He admitted that he formerly owned the 8 foot driveway and that he released it to complainants in consideration of a grant of another right of way across their land to Sidney Street; that one of the complainants, Jake Frumin, Trustee, then owner of the land which the easement was to cross, gave him the use of a section 36 x 39 and the right to fence and use said section as a repair shop

and storage yard, and that complainants are estopped and precluded from making objections to the maintenance of the fence.

Previous to the hearing the regular Chancellor recused himself and the Hon. C. W. K. Meacham, of the Chattanooga Bar, was by agreement of the parties designated as Special Chancellor to hear the case. Upon the hearing the Special Chancellor denied complainants' claim to the 2.9 foot strip of land, but sustained their claim to compel the defendant to remove the fence and gate obstructing the easement. Thereupon both parties appealed to this Court and have assigned numerous errors, the complainants insisting that the Chancellor erred in failing to decree them the possession of the strip of land in question, and the defendant insisting that the Chancellor erred in requiring him to remove the fence and gate obstructing the easement.

The record discloses that the defendant's property is situated on the west side of Broad Street, in the City of Chattanooga, and consists of a lot and building 170 feet long. In 1937 when he purchased this property there was a brick building on the lot fronting 21 feet on Broad Street and extending back approximately 100 feet. In 1946-47 he erected a concrete building on the vacant part of this lot at the rear of this brick building, locating the south wall of the new building alongside the fence in question. This created a rectangular offset 6 feet wide by 39½ feet long between the east end of his new building and the west end of complainants' adjacent building, which also fronts on Broad Street and extends back a distance of 60 feet. Complainants are the owners of all the property immediately south and west of the defendant's building, and they admitted that the defendant built a fence in 1937, but that in October, 1943, or sometime

thereafter, he moved the fence south 2.9 feet onto their land.

We shall first consider the question relating to the factual dispute over the alleged removal of the fence.

Complainant acquired title to their property on May 20, 1941, and to prove their case they relied upon several plats and drawings of registered and unregistered surveyors, as well as a large number of witnesses whose testimony will hereinafter be considered. The first of the surveys was made in March, 1937, the second in 1941, and the last in October, 1948. With the exception of slight variances in the measurements, depending upon the points from which the surveys started, the three surveys established the line near the location insisted upon by the complainants. However, these surveys do not settle the question of whether or not the fence (or a fence which the complainants admitted was erected on the dividing line in 1937) was in 1943 or thereafter removed to its present location by the defendant. Thus the burden was on the complainants to prove by a preponderance of the evidence that the fence was removed within 7 years prior to February 16, 1949, the date suit herein was filed, if they are to successfully overcome the defendant's plea of 7 years adverse possession.

Complainants introduced several witnesses who testified that previous to 1943 they had been on complainants' property on one or more occasions, and had observed the fence which at that time was from 2 to 3 feet south of the defendant's brick building; that they had seen the fence since that time and it appeared to be from 5 to 6 feet from said building. They differed, however, as to whether or not the east end of the fence when they first saw it terminated on the north or south side of a chimney located in the west end of complainants' building. A number of

these witnesses, including former tenants who occupied the building previous to 1943, stated positively that the end of the fence at that time did not terminate at a point near the middle of the window in the rear of the building as does the present fence; that previous to said year they had frequently looked through the window from both inside and outside of the building, and that the fence as then located was north of said window.

Apparently complainants paid little if any attention to the location of the fence from the date they purchased the property until the defendant started the construction of his new building in 1946, and neither of the complainants nor any of their witnesses undertook to state specifically the month the fence was moved, though the premises were continuously occupied by former tenants and their employees and such could hardly have happened without someone seeing or knowing about it.

The defendant's proof shows that he purchased his property from Ralph Shafer on January 20, 1937, at which time he had a survey made to establish the south boundary line of the property; that the surveyors placed stakes along the dividing line as located by them, and that shortly thereafter he built a fence consisting of wire and iron posts and partly of wood on what he understood was the dividing line; that the fence as then erected was approximately 6 feet south of his brick building and extended from a window in the rear of the building now owned by complainants to the west end of his lot; that the fence as originally erected has never been moved, and that the strip of land in question has been in his continuous possession ever since.

Nine witnesses, former employees of the defendant at his present place of business, between the years 1937 and 1943, testified that the location of the fence at that

time was from 5 to 6 feet south of defendant's building, and that they had recently been on the premises and the fence had not been moved. Three of these former employees testified they helped the defendant build the fence in 1937, and 4 of them stated that the east terminus of the fence at that time was near the middle of the window in the west end of the building now owned by complainants. Another former employee testified that during the time he worked for the defendant he was not permitted to smoke in the building and he frequently went outside into the space in question to smoke; that he was 5 feet 9 inches tall and on one or two occasions he stretched out on the ground between the fence and the building, and that the space seemed to be some 4 or 5 inches wider than his height. Another former employee corroborated this witness' statement by saying he had seen employees lying across the space resting and eating their lunches.

Defendant's brother, J. T. May, a graduate engineer, testified that he frequently visited his brother in 1937 and 1938, during which time he was at his brother's place of business daily; that on one occasion a fire broke out in the adjacent building now owned by complainants, and noticing the smoke coming through the floor of his brother's building, he went outside into the space in question where he looked through the north half of the window at the east terminus of the fence and discovered the fire. He estimated the fence at that time to be approximately 6 feet from his brother's building, and stated it had not been moved.

Milton Donelly, a former occupant of complainants' building, said that May built a fence along the line immediately after he purchased the property in 1937, and that the fence was about 6 feet from the building and had not been moved.

Ralph Shafer, who sold the property to May in 1937, stated that a survey was made immediately thereafter and that he was present when a fence was erected by May on the property line 6 feet south of his building, and that the fence as then located has not been changed.

The defendant as well as his witnesses estimated the height of the fence at the time it was erected to be from 5 to 6 feet, and defendant introduced in evidence photographs of the fence with old machinery and debris piled around on the ground. From these photographs it definitely appears that the fence has been in its present location for several years; that it is quite old, and has had considerable wear.

In this case, as in similar cases where a factual question is involved, the dispute must be settled by the weight of the evidence. This ofttimes compels us to disregard the testimony of witnesses who have honestly endeavored to state the facts as they remembered them, as in the present case. But it is our duty to decide legal matters impartially by weighing the evidence presented in the record, and it appears to us that the defendant's witnesses were in a much better position to know the location of the fence at the time it was erected in 1937, and subsequently thereto, than were complainants' witnesses, none of whom ever saw the alleged removal of the fence. After carefully reading the record we have concluded that the evidence does not preponderate against the decree but supports it. Code Sec. 10622.

The Special Chancellor found, and we concur in his findings, that the evidence preponderated in favor of the contentions made by the defendant that the fence in question had not been moved since its construction in 1937, and that the defendant acquired title to the strip of land involved by adverse possession for more than 7

years. In previous decisions our Appellate Courts have frequently declared that where a purchaser of land accidentally or by mistake incloses a contiguous strip, believing he is placing the fence on the boundary, and holds the inclosed strip for 7 years, his possession is adverse and will avail against the true owner. Code Sec. 8584. Erck v. Church, 87 Tenn. 575, 11 S. W. 794, 4 L. R. A. 641; Peoples v. Hagaman, 31 Tenn. App. 398, 215 S. W. (2d) 827; Liberto v. Steele, 188 Tenn. 529, 221 S. W. (2d) 701.

■ Furthermore, under the proof, the complainants did not acquire title to the strip of land in controversy as the land was adversely held by the defendant under fence prior to and on the date complainants obtained their deed. Under our authorities, this made complainants' deed champertous and void as to the inclosed strip. Code Secs. 7823, 7824, 7827; Jones v. Mosley, 29 Tenn. App. 559, 198 S. W. (2d) 652; Young v. Little's Unknown Heirs, 34 Tenn. App. 39, 232 S. W. (2d) 614.

■■ In sustaining that portion of the complainants' bill directing the defendant to remove the fence and gate which he had previously erected across the easement, we find that the able opinion of the Special Chancellor fully sets forth the facts and the proper legal conclusions. We, therefore, concur in and adopt said findings and conclusions, which read as follows:

"The deed dated May 20, 1941, creating this easement or right of way, as also a deed of correction, dated January 19, 1942, described the way in two sections, the northern section comprising a space 36 x 39 feet and the balance, or southern section, 16 feet in width and extending to Sidney Street. As this transaction was clearly an exchange of easement by the parties, their purpose and intent with respect to the new easement is pertinent.

That intention can only be ascertained from the four corners of the agreement itself. That instrument discloses no difference of intention or purpose, no difference in use from the purpose and use of the 8 feet driveway. The contract creating the new easement refers to the 8 feet way as an 'easement or right of way for a driveway.' A driveway is a passage way, a travel way, a way of ingress and egress. Thus, from the language of the contract itself, the purpose of the old 8 feet way must be interpreted as merely a driveway. The new right of way which was granted in substitution for the old one must also be deemed a driveway. No enlarged purpose is shown, that the new right of way was created as a substitute for the old is made certain by the conveying instrument, which says:

"'This is not a conveyance of the fee in and to the last two parcels or tracts herein described, but is made for the purpose of substituting the easement and right of way last above described for the eight feet easement, first hereinabove described.'

"Consequently, there being nothing in the easement indicating an intention to extend or enlarge the rights of use of the new easements over the rights of use of the eight feet driveway, it must be held to be limited to use as a driveway.

"The defendant insists that the easement contract grants him a right to fence and exclusively use the 36 x 39 feet rectangle plot or space. He bases his insistence on the following clause of the grant:

"'I, Jake Frumin, Trustee, do hereby grant and convey unto William E. May * * * an easement or right to use the following parcel or tract of land * * *,

"The words 'right to use' do not necessarily add any rights to an easement or right of way not therein expressed. The words, 'right to use', may as well mean right to use as a right of way, or right to use as a driveway.

■ "It is also contended by defendant that complainants gave him the right to fence and to have exclusive possession of the 36 x 39 feet plat to use for a repair shop and storage yard. He so testified, and complainants denied having done so. There is no such provision in the grant, and besides, his testimony was not admissible because in violation of the parol evidence rule. When an agreement has been reduced to writing, its true interpretation and purpose must be determined from the terms of the instrument itself. All verbal agreements made on or before reduction to writing are merged in the written instrument. 12 Am. Jur. pp. 755, 756, Sec. 232.

■ "Moreover, as shown above, it was not the intention of the parties that the easement contract should be a conveyance in fee, nor that the easement should be fenced and used under lock and key in exclusive possession. Such holding would be practically equivalent to a transfer of title, since such a possession would as effectively deprive the owner of any use of his land. In the case of Adams v. Winnett, 25 Tenn. App. 276, 156 S. W. (2d) 353, 357, quoting from 17 Am. Jur. 996, Sec. 98, it is said:

" 'The use of an easement must be confined strictly to the purpose for which it was granted or reserved. A principle which underlies the use of all easements is that the owner of an easement cannot materially increase the burden of it upon the servient estate or impose * * * a new and additional burden.'

44

 "Accordingly, there being an absence of any provision for fencing it, or any stipulation to that effect, the right of way may not be fenced by the owner: Crum v. Fillers, 6 Tenn. App. 547; Henry v. Tenn. Electric Power Company, 5 Tenn. App. 205; Foshee v. Brigman, 174 Tenn. 564, 129 S. W. (2d) 207; Debusk v. Riley, 154 Tenn. 381, 289 S. W. 493.

"For the same reason an easement may not be used by the grantee for a purpose not expressed in the grant.

"On the other hand, the owner of the fee may fence the easement and provide gates and termini unless forbidden by grant. In the case of Log v. Garrison, 1 Tenn. App. 211, it is said:

" 'In the absence of an express provision for an open way in a grant or gift of a private right of way the owner of the fee may show the termini by gates, which the grantee must open and close when he uses the way.' 17 American Jur. Sec. 121, p. 1011.

"Defendant further takes the position that, upon the facts of this case complainants are precluded from making any objections to the maintenance of the fence, and has pleaded estoppel. He constructed a gate, without apparent authority from complainants so far as this record shows. It is true that while the gate was being built complainant, Jake Frumin, appeared and protested somewhat, but in fact assisted in locating the gate. In response to his protest defendant offered, or promised, to furnish keys to the gate. No agreement was reached. Later, another conversation, between defendant and complainants' representative, Ben L. Cash, took place, but again no definite understanding was reached. Mr. Cash says his understanding therefrom was that the fence would be only temporary. The gate was constructed in 1941, and is still being maintained by defendant as an exclusive

area. Fences along the east and west sides were there when the easement was created. Now, complainants want to open the right of way and use it in conjunction with defendant. It seems that, under the law and the facts, they have a right to do so. No agreement to fence and use for private purposes was ever entered into between the parties. At most, complainants only acquiesced in the maintenance of the fence, and defendant never ever claimed openly and adversely. He never withdrew his offer to furnish keys for the gate and his implied acknowledgment of complainants' right to mutual use of the easement.

"A decree will be entered requiring the removal of the gate, and opening the right of way."

It results that all assignments of error will be overruled and the decree will be affirmed, and the cause will be remanded for such orders as may be necessary to enforce the decree. The costs will be taxed one-half against the complainants and the other half against the defendant.

McAmis and Hale, JJ., concur.