192 A.2d 453 (1963)
David A. POTTER and Helene C. Potter, his wife, Plaintiffs,
v.
John GUSTAFSON and Ella E. Gustafson, his wife, Defendants.
Court of Chancery of Delaware, Sussex.
June 20, 1963.
*454 James C. Sabo (of Tunnell & Raysor), Georgetown, for plaintiffs.
Jackson R. Dunlap, Jr., Georgetown, for defendants.
MARVEL, Vice Chancellor.
Plaintiffs' amended complaint alleges that on December 20, 1954 they became the owners of two tracts of marshland lying along the Broadkiln River in Sussex County. The tract in issue runs from the south bank of the river to lands owned by defendants. Within its boundaries it contains fourteen acres of marshland more or less and except for its southern boundary is virtually surrounded either by water or wetlands. Plaintiffs allege that at the time they purchased the tract in question a simple country lane established over the years by the traversing of various vehicles extended from a point adjacent to their marsh through lands of the defendants and others to a public road known as Route 258. This action seeks to have defendants enjoined from interfering with plaintiffs' use of such claimed right-of-way, defendants having obliterated that portion of it which passes through their farm by plowing it into their cultivated lands prior to the filing of this suit.
According to the complaint, the lands now in controversy were common lands of David Robbins, whose 1900 will devised 30 acres of marshland to his son John together with a right-of-way "through or across" farm lands of the decedent. It is alleged in the amended complaint that title to plaintiffs' fourteen acre tract may be traced back to that of the son John M. Robbins. It is further alleged in such pleading that the balance of the decedent's lands in the area were devised to another son James, such lands "being subject to the aforesaid right-of-way". Plaintiffs then go on to make the conclusory averment that title to defendants' farm derives from that devised to James M. Robbins.
Defendants deny knowledge or information sufficient to form a belief about such allegations of the amended complaint and further allege "* * * that the right-of-way, if any, referred to * * *" in paragraph four of the amended bill of complaint * * * "was devised by the said David Robbins, that said right-of-way since the death of the said David Robbins has been abandoned for more than twenty *455 years prior to the filing of the aforesaid bill of complaint * * *"
Plaintiffs in addition to claiming a right of ingress to and egress from their marshland under what they contend were the express provisions of the will of David Robbins also claim that such right-of-way also exists not only by implication but by necessity as well. It is further contended that in any event use of the road by plaintiffs and their predecessors in title over a period of more than twenty years has established a prescriptive right therein.
By stipulation of the parties it has been agreed that title to the lands here in controversy may be traced back to David Robbins, and it is also agreed, notwithstanding the allegations of the amended complaint, that title to both plaintiffs' and defendants' lands is derived from that devised to James M. Robbins who in 1913 split his devise from his father into the two tracts now held respectively by the present litigants.
It is apparently on the basis of these 1913 conveyances that plaintiffs now contend after trial that the right of way claimed by them arose by implication or by necessity. Defendants' position is that any road which may have run through their farm prior to its being plowed under existed solely for the convenience of those farming the lands now owned by defendants, that its use by plaintiffs and others has been at the most sporadic, and that in any event such road has never extended to the boundary of plaintiffs' marshland and thus has no terminus on a dominant demesne. Defendants also took the position at trial that an easement by necessity cannot be successfully claimed because plaintiffs could presumably reach their fourteen acres not only by boat brought up the Broadkiln River but that an overland way exists for them to reach a public road by going through other marshlands owned by them.
I conclude after considering the evidence adduced at trial that a farm road running north towards plaintiffs' marsh, originally wide enough to accommodate a farm wagon or buggy and later a motor vehicle, has run through defendants' property during the past fifty or sixty years. I also find that while this plain dirt road has been used by the occupants of what is defendants' farm for the purpose of moving farming equipment, it has also been used by past owners of plaintiffs' tract and by the plaintiff David A. Potter for going down to such marsh for purposes such as putting cattle out to graze, trapping musk-rats, observing and shooting wild fowl, and planting cattails to improve the marsh. To be sure, it was not clearly established at trial at exactly what point plaintiffs' boundary meets defendants', and the road established by the evidence no doubt does not extend to plaintiffs' boundary. Nonetheless the evidence discloses that for many years those having business at the fourteen acre swamp have been able to proceed by vehicle to a turnaround at the end of the road in dispute and to continue by foot into the marsh. Regardless of whether this is the right-of-way referred to in the will of David Robbins I am satisfied that it existed at the time the son James conveyed away what are now plaintiffs' and defendants' tracts in 1913 and has inured to the benefit of plaintiffs and their predecessors in title since that date.
It is stated in 17A American Jurisprudence, Easements § 42  p. 654 et seq., on the subject of easements implied from use upon severance of title:
"While the legal basis or rationale of the rule of implied easements from pre-existing use upon severance of title is often stated as an implied or presumed grant, the underlying basis of such rule is that unless the contrary is provided, all privileges and appurtenances which are obviously incident and necessary to the fair enjoyment of the property granted substantially in the condition in which it was enjoyed by the grantor are included in the grant. *456 The general principle is also said to be founded upon the maxim that no man can derogate from his own grant which is, in effect, a formulation of the principle of estoppel. It is also said that this rule is based upon public policy, which is favorable to the full utilization of land and the presumption that parties do not intend to render land unfit for occupancy. As a further basis, a presumption frequently invoked is that the parties contracted with a view to the condition of the property as it actually was at the time of the transaction and that after sale neither party has a right, without the consent of the other, to change, to the detriment of the other, a condition which openly and visibly exists. This presumption, however, may be rebutted by parol evidence of an agreement or understanding, at or prior to the conveyance, that the easement was not to pass, upon the theory that a presumption raised by parol evidence may also be rebutted by that character of evidence."
While the 1913 conveyances by James M. Robbins of the dominant and servient demesnes here involved are silent as to the claimed right-of-way, I conclude that such an easement of a limited type did pass to the owner of plaintiffs' tract at such time, and that such grant of what has been termed a visible easement since such time has been availed of by those having an interest in the fourteen acres here in dispute. An established appurtenance to lands may continue to be of benefit to subsequent owners of a dominant demesne even when reference thereto is omitted from later deeds, Lyman v. Clayville, 36 Del. Ch. 209, 128 A.2d 316, a case in which the easement in dispute was originally created by express grant. In Marvel v. Barley Mill Road Homes, Inc., 34 Del.Ch. 417, 104 A.2d 908, title to land acquired by adverse possession by plaintiffs' mother and not included in a deed to plaintiffs of contiguous land, record title to which was held by the grantor nevertheless was held to have passed to plaintiffs, a privity of understanding or intent having been clearly established.
In the light of these conclusions I shall not consider the somewhat conflicting and confusing testimony on the extent of the use of such lane over the past fifty or sixty years, and whether or not such use was sufficiently continuous, visible, notorious and hostile to establish an independent claim based on adverse user. Nor, because of my finding as to the existence of an implied grant is it necessary to consider the parties' contentions as to the availability or non-availability of other means of access to plaintiffs' lands. It does appear, however, in passing, that plaintiffs' other marshlands in the area were not part of the Robbins holdings at the time the easement here in issue came into being.
Turning to the nature of the easement itself, the testimony does clearly establish that the easement found to have been created by implication is of a very limited type, and on the basis of the evidence of record I conclude that defendants' lands may not now be burdened by uses not contemplated in the original implied grant and of a type more oppressive than those about which testimony was adduced. However, I am of the opinion that such implied grant includes not only the right to proceed for a proper purpose to the end of such roadway by vehicle but also to leave such vehicle on the turnaround area at such point while the traveler proceeds by foot onto the marsh proper. I say this because the topography of the lands in issue is such that a vehicle may not be driven onto plaintiffs' fourteen acre tract. It would be an unreasonable restriction on the easement in question to require plaintiffs to travel its entire length by foot. Accordingly, an incidental right to park a motor vehicle in connection with a proper use of the easement in a manner so as not to impede defendants' farming operations will be recognized.
*457 Finally, I am of the opinion that plaintiffs acted with reasonable promptness in seeking injunctive relief after their use of such easement was interfered with by defendants. Any delay in bringing suit was not shown to have induced a prejudicial change of position on defendants' part.
On notice, a form of order may be submitted granting a permanent injunction establishing plaintiffs' right to an easement to cross defendants' land along a right-of-way shown by a preponderance of the evidence to have been established through said property as such right-of-way existed prior to its being plowed under by defendants. The uses to which said easement to and from plaintiffs' marsh may be put shall be limited to hunting and trapping, the cutting of marsh hay, the grazing of cattle, the improvement of natural feed and vegetation on the marsh and incidental parking of a vehicle, as outlined above.