JAMES DELGADO *et al.*, Plaintiffs-Appellants, v. JAMES E. WILSON *et al.*, Defendants-Appellees.

Second District   No. 2—88—0064

Opinion filed January 13, 1989.

DUNN, J., dissenting.

Donald J. Weaver, of Elgin, for appellants.

Karen J. Johnson, of Brittain, Ketcham, Strass, Terlizzi, Flanagan, Weir & Johnson, P.C., of Elgin, for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiffs, James and Ofelia Delgado, appeal from an order of the trial court which permanently enjoined them from interfering with or obstructing a driveway easement granted to the defendants, James and Betty Wilson. On appeal, plaintiffs contend that the trial court misconstrued the language in the grant in determining the use limitations of defendants' easement.

On March 26, 1980, plaintiffs signed an installment agreement to purchase the north half of lot 4 in block 1 of South Elgin Addition to Elgin, which was improved with a residence known as 702 Raymond Street. The front portion of this property had a frontage of 31.67 feet on the west side of Raymond Street, and the depth was 132 feet and extended along the south side of Hasting Street. A garage is located on the westerly portion of this parcel which had an entrance from Hasting Street on the north. The plaintiffs have never lived at 702 Raymond Street but have rented their property to various tenants.

The defendants purchased the south one-half of lot 4 in block 1 of South Park Addition to Elgin in 1969, which property was improved with a dwelling known as 704 Raymond Street; this property also had a frontage of 31.67 feet on the west side of Raymond Street and had a depth of 132 feet; it was immediately adjacent to and south of the property of the plaintiffs.

On September 17, 1892, plaintiffs' predecessor in interest expressly granted a driveway easement to defendants' predecessor in interest. According to the deed, the easement was described as:

"*A right of way to be used as a driveway over and upon* a part of the north one half (½) of Lot four (4) of Block one (1) of South Park Addition to Elgin, Kane County, Illinois, being a right of way upon a strip of land five (5) feet in width (north and south) and extending lengthwise from the west line of Raymond Street and along the dividing line between the north one half (½) and the south one half (½) of said Lot four (4) west sixty six (66) feet." (Emphasis added.)

Over the years, both defendants and plaintiffs' tenants have parked cars on the area comprising defendants' easement and the concrete driveway in such a manner that the easement has been obstructed. On February 6, 1987, plaintiffs filed a two-count complaint

seeking injunctive relief against defendants. Count I alleged that defendants' conduct of parking cars on the easement obstructed plaintiffs from freely moving over the easement. Count II alleged that defendants erected a fence which encroached 7½ feet onto plaintiffs' property and that defendants damaged the foundation of the concrete driveway when they attempted to repair their easement. Count II is not at issue on appeal. On March 16, 1987, defendants filed an answer to plaintiffs' complaint and a petition for a preliminary injunction against plaintiffs. Defendants' petition alleged that plaintiffs parked their cars on defendants' easement in such a manner that defendants were prevented from the use and enjoyment of their easement.

The driveway at issue in this case is improved with concrete. The concrete is located on the north portion of the defendants' property for a width of approximately 4.97 feet and runs from the west side of Raymond Street in a westerly direction for a distance of approximately 65 feet to a wire fence. At the west line of Raymond Street, the concrete driveway has a width of 8.15 feet, of which 3.18 feet is on plaintiffs' parcel and 4.97 feet is on defendants' parcel. Approximately 13 feet west of Raymond Street, the concrete on plaintiffs' parcel widens from 3.18 feet to 8 feet. The concrete ends approximately 65 feet west of Raymond Street where defendants' easement terminates, at which point a wire fence (north-south fence) has been erected which extended from the southwest corner of plaintiffs' house southerly across the end of the driveway to the defendants' house; also, the plaintiffs have constructed another wire fence that runs westerly along the south line of their property for a distance of approximately 65 feet to the west line of plaintiffs' parcel. The defendants do not have a garage on their property. Furthermore, the distance between the north-south fence just described along plaintiffs' south line and the defendants' dwelling is not of sufficient width for a vehicle to enter into the west 66 feet of defendants' parcel. The north-south fence also was a barrier to access by motor vehicle to the rear of plaintiffs' lot from the concrete driveway, as there is only six feet from plaintiffs' dwelling to the wire fence extending west; counsel for both parties advised the court that that part of the north-south fence has been torn down.

Exhibit A is a diagram reproduced and enlarged for the purpose of clarity from plaintiffs' exhibit 1, which is a survey dated November 13, 1984. This exhibit A sets forth the location of the dwellings, plaintiffs' garage, the concrete driveway between the two dwellings, and the two wire fences described above. It should be noted that this

exhibit portrays the lot line between the properties of the plaintiff and the defendant by a black line. There is no showing on this exhibit exactly where the north line of defendants' easement is located on the concrete driveway; however, defendants' group exhibit No. 6 contains six pictures of the concrete driveway between plaintiffs' and defendants' dwellings. Three of these photos show a red electric cord located about three feet south of the house on plaintiffs' property which would be the approximate location of the north line of defendants' easement; also, three other photos in defendants' group exhibit No. 6 show the same area with the same red electric cord positioned at approximately the location of the line between the plaintiffs' and defendants' properties. Over the years, defendants and plaintiffs' tenants have parked cars on the concrete driveway which includes the area comprising the defendants' easement.

On the basis of the foregoing facts and on the basis of the survey being plaintiffs' exhibit 1, it is obvious that a car stopped or parked on the concrete drive between the two dwellings would block the use of the driveway west of or beyond the point where the car is stopped or parked, and conversely, if two cars were stopped or parked on the driveway, the one further to the west could not exit east from the driveway onto Raymond Street. It is further apparent that plaintiffs or their tenants cannot enter onto and use the concrete portion of the driveway from Raymond Street for a distance of 13 feet without being on defendants' property. If plaintiffs should increase the width of the concrete by five feet on their property at Raymond Street, then they could enter the north eight feet of the driveway without encroaching on defendants' property, but they would be using a portion of defendants' five-foot easement. Assuming this were done, there is insufficient space on the concrete driveway for two vehicles to park side by side between the two houses.

Defendants' exhibit No. 4 consists of a survey of the defendants' property; however, it is noted on said survey that it is for mortgagee's inspection and is not to be used for any other purpose, and it states that the corners have not been set or monumented. Defendants' group exhibit No. 7 contains numerous photographs showing the defendants' and the plaintiffs' tenant's vehicles parked at various positions between the two houses. The evidence submitted to the trial court consisted of the surveys described above, together with various photographs previously mentioned; also, the parties stipulated as follows:

> "That the parties and their families or tenants or persons under them and that both sides from time to time have ob-

structed the right of way for varying degrees—varying dates and periods by parking thereon for extended periods of time."

After conducting a hearing on plaintiffs' complaint and defendants' petition, the trial court found, *inter alia*:

"D. That Defendants-Counter-Plaintiffs, JAMES E. WILSON'S AND BETTY E. WILSON'S parking on the said easement should remain undisturbed as it appears it was the intent of the grantor that the easement include parking for the full enjoyment of the said easement, the Defendants-Counter-Plaintiffs having no other access to nor garage on their property and Plaintiffs-Counter-Defendants having access to a garage on their property by an alternate route other than the driveway in question, and it further appears that Defendants-Counter-Plaintiffs have driven and parked their cars on the subject easement for many years since their occupancy of the dominant property;

E. That Defendants-Counter-Plaintiffs use of said driveway easement is a necessary and reasonable use, and Plaintiffs-Counter-Defendants purchased the servient premises subject to easement expressly created and which was apparent from inspection of the premises[.]"

The trial court in reaching its decision determined that this case involved neither an easement by implication nor one by prescription as there was no evidence to support such a claim; accordingly, the easement involved was established by the express language of the grant. After considering the exhibits presented and the stipulation, the court entered an order providing that the defendants' right to drive and to park on that portion of the concrete driveway, including the five-foot easement, should remain undisturbed and that use of the driveway easement by the defendants is a necessary and reasonable use. The trial court permanently enjoined the plaintiffs from interfering with or obstructing defendants' use of the easement in any manner.

Since there was no evidence to support a claim of easement by prescription or by implication, the sole issue raised in this appeal was whether the trial court correctly construed the language used in the grant of easement made in 1892 as previously described. The defendants contended that the order of the trial court was correct based on the following evidence: (1) that the grant of easement states "over and upon" and that the use of the word "upon" implies that a vehicle will be resting or parking on the land comprising the easement and that the easement is not solely for the purpose of passing over

the land; (2) that the language used in the easement does not limit its use to "ingress or egress"; that if it was intended to limit the use of the easement to eliminate parking, it would have been stated that the easement was solely for the purpose of "ingress and egress"; and (3) that there is not a garage on the defendants' parcel; that parking on the driveway easement is logical, and therefore, this fact situation supports the finding that the driveway may be used for parking, as well as for passage by the defendants.

Plaintiffs contend that the clear meaning of the grant's language indicates that the easement was intended to be a continuous passage which, by implication, excludes stops except for limited duration. According to plaintiffs, current circumstances are too remote from the original grant of the easement to glean the parties' intent. Therefore, plaintiffs conclude, there is no evidence tending to show that in 1892 the grantor intended for the easement to be utilized as a parking area for a horse drawn vehicle or for an automobile.

■ Volume 13A of Words and Phrases, at page 43, defines "driveway" as follows:

> "A 'driveway' is a passage way, a travel way, a way of ingress and egress. *Frumin v. May* (1952), 36 Tenn. App. 32, 251 S.W.2d 314, 319.
>
> * * *
>
> The word 'driveway' in its natural and ordinary sense, means a passage along which carriages or animals may be driven. *Pierce v. Botvin* (1950), 76 R.I. 422, [427-28], 71 A.2d 773, 776."

In the case of *In re Emmet S. Hickman Co.* (1954), 49 Del. (ID Terry) 13, 19, 108 A.2d 667, 670, the court was interpreting the word "driveway" and "parking lot" in connection with a provision of a municipal zoning ordinance. In the course of the opinion, the court stated:

> "A driveway is certainly not a parking lot; and we think it equally clear that a parking lot is not a driveway. The one imports the idea of vehicles not in use; the other the idea of cars coming and going—delivering passengers or goods and departing."

In *Colborn v. Bailey* (Tex. Civ. App. 1966), 408 S.W.2d 327, 328, the case involved an easement over a driveway for ingress and egress which was a common easement by the parties owning the adjacent properties. In that case, the trial court had interpreted the wording "for driveway purposes" as meaning used solely for ingress and egress. The court held that the defendant was properly enjoined

from parking her car in the driveway.

In *Dolske v. Gormley* (1962), 58 Cal. 2d 513, 519, 375 P.2d 174, 178, 25 Cal. Rptr. 270, 274, the court stated:

" 'Driveway' is defined in Webster's New World Dictionary (1951) page 443, as 'a path leading from a garage or house to the street, used especially by automobiles.' While admittedly driveways are commonly used for multifarious additional purposes, including those general maintenance and access functions contended for by plaintiff, 'The law is jealous of the claim of an easement \* \* \* and likewise of the extent of the rights claimed under an instrument granting an easement. The rule is that every incident of ownership not inconsistent with the easement and the enjoyment of the same, is reserved to the grantor.' "

In this case, there is no evidence whatsoever of the circumstances attending the granting of the easement in 1892. There were no automobiles then, only horses, buggies, and wagons. It is only reasonable to assume that temporary stops or parking by the adjacent owners must have been intended. The order of the trial court here permanently enjoins plaintiffs from interfering with or obstructing the defendants in any manner with the driveway easement, including but not limited to driving or parking thereon. In effect, the order of the trial court gives the defendants the unrestricted use of the easement area for driving and parking purposes. Such an interpretation of the easement grant unreasonably interferes with the rights of the plaintiffs as the owners of the servient estate. As previously stated, this case must be decided solely on the basis of the language of the grant. A reasonable construction of the word "driveway" in this situation requires that both parties be allowed to drive into and use the driveway and that each be permitted to stop thereon but only for such length of time as would be required to load or unload passengers or articles of personal property. Parking in the easement by any party should be prohibited except as previously stated.

It is entirely possible that the parties in light of this decision may find it possible to reach a settlement by agreeing to the terms of a revised easement so that defendants may enter their rear yard or by agreeing to some kind of parking schedule both of which solutions neither this court nor the trial court could order unless both parties agreed thereto.

The court realizes that the reversal of the trial court's order will create confusion as to the outcome of this litigation; however, it will

be the task of the trial court to provide for reasonable use of the driveway and the stopping of vehicles thereon by both parties and their assignees in accordance with the foregoing standard.

The order of the trial court is reversed, and this case is remanded to the trial court for such order as it may enter in accordance with the views expressed herein.

Reversed and remanded.

NASH, J., concurs.

JUSTICE DUNN, dissenting:

I respectfully dissent. The majority concludes that since the easement in question was granted in 1892, during the horse and buggy era, the original parties to that grant could not have intended to allow parking on the easement by the owner of the dominant estate. The record provides no support for this conclusion, nor does the majority explain why it is not conceivable that the original parties could have intended to permit the easement holder to park a buggy or wagon on the easement.

The owner of the dominant estate is entitled to the necessary use of the easement. (*Flower v. Valentine* (1985), 135 Ill. App. 3d 1034, 1039, 482 N.E.2d 682, 687.) Necessary use is defined as the use which is reasonably necessary for full enjoyment of the premises. (*Flower*, 135 Ill. App. 3d at 1039, 482 N.E.2d at 708.) The question of what constitutes a necessary use is one for the trier of fact. (*Beggs v. Ragsdale* (1983), 120 Ill. App. 3d 333, 338, 457 N.E.2d 1079, 1083.) In the case at bar, the trial judge properly determined that parking was a necessary and reasonable use of the easement by the owners of the dominant estate. Since the driveway does not lead to a garage, it can only be used for parking. As the trial court recognized, the easement is worthless to defendants if they are not permitted to park on it.

I do not believe the authorities from other jurisdictions cited by the majority are persuasive. I would follow the general rule that an easement holder may park on the easement so long as this would not unreasonably interfere with the rights of the holder of the servient estate. (*State v. Larason* (1956), 75 Ohio Abs. 211, ____, 143 N.E.2d 502, 504; Annot., 37 A.L.R.2d 944, 946-47 (1954).) This rule was applied in *Potter v. Gustafson* (1963), 41 Del. Ch. 229, 192 A.2d 453, and *Penn Bowling Recreation Centers, Inc. v. Hot Shoppes, Inc.* (D.C. Cir. 1949), 179 F.2d 64.

In *Potter*, the court ruled that an owner of marshland had an easement over adjacent farmland to reach the marsh. (*Potter*, 41 Del. Ch. at 229-30, 192 A.2d at 454.) In order to reach the marsh, the owner had to travel on a road on the farm, and then walk on the farmland after the road ended. The court also concluded that under the circumstances of the case, it would be reasonable to construe the easement in such a manner that the marsh owner would be permitted to park a motor vehicle on a turnaround at the end of the road because otherwise he would be unnecessarily forced to do additional walking in order to reach the marsh. 41 Del. Ch. at 233-34, 192 A.2d at 456.

In *Penn Bowling*, plaintiff held an easement for ingress and egress on a driveway located on defendant's property. The court stated that plaintiff was entitled to a reasonable use of the easement and that the question of what constituted a reasonable use would be resolved by construing the easement in light of the situation of the property and the surrounding circumstances. (*Penn Bowling*, 179 F.2d at 67.) Since defendant, the owner of the servient estate, needed the driveway almost constantly for business purposes, the court ruled that plaintiff would not be permitted to park vehicles on the driveway. 179 F.2d at 64.

The circumstances of this case dictate the result reached by the trial court. Plaintiffs have a garage which is accessible by means other than a driveway. Defendants have an easement on a driveway which leads nowhere and can only be used for parking. The only reasonable manner in which the easement can be construed in light of these circumstances is to hold that it permits defendants to park on their easement. While the majority complains that such an interpretation deprives plaintiffs of the use of their property, the majority's interpretation prevents anyone from using the driveway for its principal function, parking. Since I do not agree that this result is required by the applicable case law or by logic, I respectfully dissent.